## J. E. STRAUS ET AL. v. GEO. BARNETT ET AL.

APPEAL BY PLAINTIFFS FROM THE COURT OF COMMON PLEAS
NO. 3 OF PHILADELPHIA COUNTY.

Argued January 30, 1891—Decided February 16, 1891.

Mere discomfort and annoyance, without substantial injury to property or business, suffered by one manufacturer from the noise and vibrations necessarily caused by the machinery of another, in conducting a

lawful business in a neighborhood devoted exclusively to manufacturing purposes, are not sufficient to justify the issuing of an injunction.


Before PAXSON, C. J., CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 72 January Term 1891, Sup. Ct.; court below, No. 588 March Term 1885, C. P. No. 3, in Equity.


On May 5, 1885, Joseph E. Straus and .Albert E. Arnold, trading as J. E. Straus & Co., filed a bill in equity against George Barnett and Henry Barnett, wherein it was averred that the plaintiffs were the owners of a lot of ground and buildings situate on the north side of Richmond street, Philadelphia, and occupied and used by them in their business as galvanizers and dealers in hoop- and sheet-iron; that the defendants were file-makers, occupying adjoining premises separated by a partition wall from the premises of the plaintiffs; that, prior to 1881, the defendants had a number of steam trip-hammers in use for forging and hammering out steel, erected along the north wall of their building on Eagle street; that the trip-hammers were of great weight and struck rapid, regular and heavy blows, causing great noise and a violent concussion of the ground, but in the position in which they were then placed they caused no injury or inconvenience to the plaintiffs; that in May, 1881, the defendants began to remove these trip-hammers and to set them up close to and along the line of the party wall, when the plaintiffs, fearing that the constant noise and concussion of the ground likely to ensue therefrom along the length of their building would injure them, on May 21, 1881, and prior to the actual removal, notified the defendants that the contemplated removal would cause them injury, and warned them that, if persisted in, an injunction would be applied for; that the defendants, notwithstanding, removed the trip-hammers and set them up by the party wall along the whole length of the plaintiffs' building, and since then had increased the number and size of the trip-hammers and had them continuously in operation during all the business hours of the day; that, after the removal and the running of the trip-hammers in their new position, the plaintiffs were grievously disturbed, annoyed, and injured in the reasonable and ordinary

use and enjoyment of their said building, and in the carrying on of their business therein; that conversation, the transaction of business, the writing of letters and the keeping of books, were hindered and prevented; that the foundations of plaintiffs' building were constantly shaken, and the building was likely to be seriously injured thereby; and that the annoyance and disturbance had gradually increased, until the same had become such an injury that unless the defendants were compelled in some way to modify their working, so as to diminish the noise and jarring, the plaintiffs would be compelled to remove their business from its present location, and would thereby sustain loss and injury beyond repair; praying:

1. That the defendants be restrained from operating and using the said hammers in carrying on and conducting their business therewith, to the injury of the plaintiffs.

2. That the defendants be restrained from committing the acts heretofore alleged to be a nuisance to the plaintiff's property and business.

3. Other relief.

On August 5, 1885, the defendants answered, admitting the use of the trip-hammers, the noise and concussion caused thereby, and the change in their position as alleged in the bill, but averred, inter alia, that the use of the hammers, as admitted, was necessary for the defendants' business and such as was usual and proper; that the locality was not one of residences, but of manufacturing and industrial operations, and that the galvanizing works carried on by the plaintiffs were a source of great annoyance to the defendants, by reason of the volumes of smoke and noxious fumes emanating therefrom, etc., etc.

Issue having been joined, testimony was taken and reported by an examiner, when the cause was referred to *Mr. Walter Geo. Smith*, as master, who on March 30, 1889, filed a report finding the following facts:

1. The defendants were carrying on their business in its present location, but under a different arrangement of their plant, before the plaintiffs came into possession of their property.

2. The defendants in 1881, 1882 and 1883, made such changes in the arrangement of their manufactory as to cause great noise, vibration and consequent annoyance to the plaintiffs,

from the use of certain hammers erected along the party wall. This annoyance, while very serious, had not been shown to have affected the success of plaintiffs' business, or to have compelled their removal to a more favorable location. This bill was not filed for two years after the changes were completed.

3. Defendants were duly notified prior to making these changes what the result to the plaintiffs would be, but persisted in the face of plaintiffs' protest.

4. In arranging their works, the defendants have consulted their own convenience, and have so far succeeded that they have the best possible arrangement, in view of the character of their buildings and the gradual growth of their business.

5. The machinery used by the defendants is such as is ordinarily used in such business, and no evidence appears of any malicious intent in arranging it as it now is.

6. It would have been practicable for them to have made the changes in their works, without giving the annoyance complained of, but at a very largely increased cost. To re-arrange their works now would entail a heavy cost.

7. While the primary cause of the annoyance caused the plaintiffs must be attributed to the noise and vibration produced by the defendants' hammers, the character of the soil, the defects of the party wall, and the storing of iron in the plaintiffs' wareroom, where it rattles with the vibration of the earth, are important factors in reaching an explanation of the state of facts as shown in the testimony.

8. The works of the plaintiffs are at times annoying to the defendants and the other owners of property in the vicinity, but no complaint has been made, as the annoyance has been considered a necessary incident of the neighborhood.

9. The neighborhood in which the business of both parties is carried on is a manufacturing neighborhood.

Upon the foregoing facts, citing and considering Wood on Nuisances, §§ 9, 13; Pool v. Higginson, 8 Daly 113; Ball v. Ray, L. R. 8 Ch. Div. 47; Sturges v. Bridgeman, L. R. 11 Ch. Div. 852; Doellner v. Tynan, 38 How. Pr. 176; Tipping v. Smelting Co., 116 E. C. L. R. 608; s. c. 11 H. L. 642; Crump v. Lambert, L. R. 3 Eq. 408; Cook v. Forbes, L. R. 5 Eq. 165;

Demarest v. Hardhan, 4 N. J. Eq. 469; Gilbert v. Showerman, 23 Mich. 448; Goodall v. Crofton, 33 Ohio St. 271 (31 Am. Rep. 535); Huckenstine's App., 70 Pa. 102; Rhodes. v. Dunbar, 57 Pa. 274; Dilworth's App., 91 Pa. 247; Penna. Coal Co. v. Sanderson, 113 Pa. 126, the master reported his conclusions of law as follows:

Without further multiplying citations, it remains only to apply the principles as laid down by our Supreme Court to the case in hand.   Have the plaintiffs made out a case showing irreparable injury to their business?   If so, have they further shown that such injury is continuous and accumulative?   And, further, that such injury could not be readily measured in an action for damages in a court of law?   It would seem that an affirmative answer must be given to each one of these queries, in order to warrant the relief prayed for.   If such an answer could be given, then the defence that the neighborhood is devoted to manufacturing and that the works of the defendant have been arranged and are carried on with the utmost skill, would be of no avail.

The rights of property owners to the full and free enjoyment of their land, subject only to such restrictions as the requirements of the community make necessary, cannot be invaded on any such grounds.   But none of the evidence, here, discloses the existence of such injury to the plaintiffs as would warrant the enjoining of the defendants from the use of their hammer shop.   It is true, some evidence was adduced tending to show that the walls of the plaintiffs' building have been cracked and the mortar loosened by the vibration caused by the defendants' hammers; but this evidence is not so clear and satisfactory as to prove that the injury may not have arisen from a defective construction of the foundation walls, or indeed that it is of a serious character at all.   Even if it were so, it can be readily measured in damages, and an action at law would afford ample opportunity to recover them.

Much evidence was offered to show that, in this case, as in Demarest v. Hardham, the annoyance and discomfort caused the plaintiffs, might be obviated without serious expense or inconvenience to the defendants, by changing the location of their machinery and hammers, so as to take the latter from their present position along the party wall to another part of the

defendants' works. If the evidence on this point were direct and satisfactory, it might be that a court of equity would interfere and require a change of the existing arrangement, for the reason that the continued maintenance of the hammers in a position where they were the source of great annoyance to the plaintiffs, without being of any special advantage to the defendants, would savor of wantonness and malice. But a careful study of the testimony of the witnesses best qualified to pass upon this matter, has satisfied the master's mind that the present arrangement could not be changed without entailing a heavy expense upon the defendants and the serious crippling of their business. That such a change is physically possible, by a complete re-arrangement of the defendants' works requires no demonstration, but this fact would not warrant a chancellor in granting an injunction.

The fact that the defendants have erected their works at a large expense and for the express purposes of their business, should not of course be of controlling weight in determining the question under consideration. They deliberately took the risks of an injunction when they disregarded the written protest that the plaintiffs served upon them, while the alterations which brought their hammers to their present position were being made. Nor would it be any argument against the plaintiffs that they had erected their office and wareroom subsequently to the defendants, having voluntarily come into the neighborhood knowing that the hammer works were there. A business may be lawfully carried on at one time which subsequently by reason of changes in the locality will become a nuisance and be restrained; but here, there has been no decrease in the number of manufacturing establishments in the neighborhood, and the defendants have violated none of its traditions in maintaining their steam hammers; nor does there seem to be any probability that for a long time in the future there will be anything unreasonable in the maintenance of them. Certainly, the plaintiffs could not have expected with any reason that they would have found the same peace and quiet on Otter and Richmond streets as might have been found in another part of the city. The testimony shows that some years previously Disston & Co., had steam hammers on the opposite side of the street; and, although their establishment has since been

moved to Tacony, the neighborhood retains its previous character. It would seem that the defendants could hardly have chosen a locality in Philadelphia where the inevitable annoyance of their hammers would be less liable to restraint from a court of equity. It is not necessary, in order to decide this case, to minimize in any degree the annoyance and discomfort that the plaintiffs suffer from the noise and vibration resulting from the use of the defendants' hammers. The weakness in their case is the fact that they have shown no substantial pecuniary damage. Not that if they had done so they would necessarily have been entitled to relief in a court of equity, but that without this element such a court never would interfere.

It is alleged in the bill that unless the hammers are stopped, the plaintiffs will be compelled to move. Perhaps it would be unfair to deduce any argument against the effect of this statement, from the fact that they have been, during the somewhat lengthy progress of this litigation and still are, carrying on their business, because it may well be believed they are waiting only for the final determination of the case; but the fact that the hammers, as at present arranged, had been in operation for two years prior to the filing of the bill, and without any further complaint than that implied in the filing of the notice of protest set forth in the bill, certainly warrants the inference that the discomfort and annoyance are not intolerable. Moreover, no evidence has been offered to show that they have lost a single customer since the hammers were in operation, or that their business is any less prosperous than it was before they were placed where they are now. It can be readily believed that the keeping of books and other office work is far from agreeable amidst the crash and din of ponderous steam hammers and the rattling of vibrating iron, but the fact remains that this work has been done and is now being done at whatever cost of physical discomfort. No doubt it is convenient to the plaintiffs to have their office and wareroom in the same building, but it would not seem impossible for them to move the former to a more quiet locality. Certainly, if one deliberately seek a manufacturing locality to establish an office for the keeping of accounts, or any similar occupation requiring comparative quiet, he would not be permitted through an appeal to the courts to change the occupation of its inhabitants, to obtain the condi-

Arguments.

tions necessary for the successful prosecution of his business. The plaintiffs, so far as their office work is concerned, must submit to the exigencies of the neighborhood.

It is not altogether clear that the faulty construction of the plaintiffs' wall may not be one of the principal reasons for the annoyance to which they are subjected. On this point, the testimony is not conclusive, but there is enough doubt to cause hesitation in tracing out the causes that lead to the condition of which they complain. Whether or not the noise and vibration would be entirely stopped were the foundations carried down to the solid ground beneath the superficial deposit of ashes, does not clearly appear; but it would seem that they cannot complain of the consequences, if their building has been improperly constructed.

Another consideration is worthy of attention; the fact that the plaintiffs are themselves carrying on a business which at times is extremely hurtful to the pure air which their neighbors have a right to enjoy. While this fact would not of itself be sufficient to excuse the commission of a nuisance by the defendants, yet it might well deter a court of equity from interfering in their behalf, unless the injury complained of were clear and unmistakable: Wood on Nuisances, § 548.

Upon the whole case, therefore, the master feels constrained to report that the plaintiffs have shown no such injury as entitles them to the relief of an injunction, and the bill should therefore be dismissed at their cost, but without prejudice to their right to bring an action for damages at law.

—To the foregoing report of the master the plaintiffs filed numerous exceptions, which, being overruled by the master, were renewed on the filing of his report. After argument thereof before the court in banc, a decree was entered on June 24, 1890, without opinion filed, dismissing the exceptions, confirming the master's report, and directing that the plaintiffs' bill be dismissed, "but without prejudice to their right to bring an action at law for damages, and that the costs be paid by the plaintiffs." Thereupon, the plaintiffs took this appeal, assigning the dismissal of their exceptions, the confirmation of the report, and the dismissal of the plaintiffs' bill for error.

*Mr. George P. Rich* and *Mr. Mayer Sulzberger*, for the appellants.

Opinion of the Court.

Counsel cited: Sparhawk v. Railway Co., 54 Pa. 401; Rhodes v. Dunbar, 57 Pa. 274; Huckenstine's App., 70 Pa. 102; Penna. Lead Co.'s App., 96 Pa. 116; Mowday v. Moore, 133 Pa. 598; Mirkil v. Morgan, 134 Pa. 144.

*Mr. John G. Johnson* (with him *Mr. Frank P. Prichard*), for the appellees.

Counsel cited: St. Helen's Smelting Co. v. Tipping, 11 H. L. 642; Ball v. Ray, L. R. 8 Ch. App. 467; Gaunt v. Fynney, L. R. 8 Ch. App. 8; Salvin v. Coal Co., L. R. 9 Ch. App. 705; Gilbert v. Showerman, 23 Mich. 448; Goodall v. Crofton, 33 Ohio St. 271 (31 Am. Rep. 535); Doellner v. Tynan, 38 How. Pr. 176; Richards's App., 57 Pa. 105; Rhodes v. Dunbar, 57 Pa. 287; Huckenstine's App., 70 Pa. 102; Dilworth's App., 91 Pa. 247; Mowday v. Moore, 133 Pa. 598.

PER CURIAM:

We see no sufficient reason why we should disturb the decree of the court below. We have no doubt the appellants have been and are annoyed by the noise and vibrations of defendants' machinery. But the business of the latter is a lawful one, and the noises referred to appear to be an inseparable and necessary incident thereof. It is not alleged that they are either negligent or malicious in their manner of conducting their business. It is an important feature in the case that their works are located in a neighborhood exclusively devoted to manufacturing purposes. In such a location there must necessarily be much noise and jarring, caused by the operation of the machinery, with perhaps smoke and unsavory smells, the result of the various industries. Admittedly the business of the appellants has not suffered by reason of the acts complained of, and, so far as the annoyances are concerned, they are to be expected in such a neighborhood, and must be endured with the best grace possible, unless valuable industries are to be sacrificed for the sake of quiet.

The decree is affirmed, and the appeal dismissed, at the costs of the appellant.