JOHN J. CRONIN

v.

CHARLES B. BLOEMECKE et al.

| 58 | 313 |
| 64 | 31 |
| 64 | 36 |

[Filed June 8th, 1899.]

1. A court of equity has jurisdiction to protect, by preliminary injunction, a dwelling-house against a nuisance which renders it uncomfortable, though the existence of such nuisance is disputed.

2. The mere fact that crowds of disorderly persons upon the highways, drawn there by entertainments given by a third person upon his own lands for pecuniary profit, are a public nuisance, does not deprive a private person of relief by injunction against a special nuisance to his dwelling-house by reason of such disorderly crowds.

On application for preliminary injunction. Heard on bill and affidavits and answer and affidavits.

*Mr. Chandler W. Riker*, for the motion.

*Mr. Thomas N. McCarter, Jr., contra.*

EMERY, V. C.

The bill is filed to enjoin a nuisance alleged to result from the playing of the game of base ball in the grounds known as the Shooting Park, in the borough of Vailsburgh, adjoining or near the city of Newark. The Shooting Park is located on Myrtle avenue and Rodwell avenue, extending about three hundred and fifty feet on. Myrtle avenue and a less distance on Rodwell avenue. Complainant owns a lot, twenty-five by one hundred feet, on the corner of the two avenues, upon which lot is his dwelling-house which has been occupied by himself and family for six years, his family consisting now of his wife, two small children and his mother. The rear of complainant's lot (twenty-five feet) bounds on the park, but on the side of his lot towards the north another lot owned by one McAdam, fifty by·

one hundred feet, directly joins complainant and is unoccupied. The Shooting Park, as appears by the answer of the defendant Bloemecke, is in the possession and control of the Essex County Amusement Company, who use or control it as a place of recreation and amusement for pecuniary profit, and the defendant Bloemecke is the manager in charge of the park and the owner of the base ball business conducted by the Newark Base Ball Club, whose games at the park are alleged to create a nuisance to complainant and his family. The nuisances or annoyances to which complainant and his family are alleged to be subjected are several in number, some of them arising from the manner in which the games themselves are carried on upon the grounds. These are (1) the driving of the balls upon complainant's grounds and the consequent trespassing upon his grounds to recover the balls, by which his use of his grounds is rendered dangerous, his peace and quiet interfered with and his property destroyed; (2) the noise occurring in the game itself by the shouts of the players and spectators, and the loud, profane and obscene language used by the players or spectators and audible at his residence, together with the noise of fights and brawls during the game. The third nuisance complained of is the collection of large numbers of idle and disorderly persons in the neighborhood of the grounds and of complainant's house while the games are in progress, which crowds, by their noise, vile language and behavior, disturb the peace and quiet of the neighborhood and subject complainant and other residents to insults and abuse if they venture from their homes.

The principal annoyance arises from the games which are carried on at the park on Sundays. The games commenced in April and are scheduled to continue during the season at intervals until after the 1st of September. Complainant's bill prays that the playing of the games may be altogether enjoined, and the present application is for a preliminary injunction to the same extent pending the final hearing.

Considering first the facts of the case as now presented by the ex parte affidavits on both sides, I think complainant has made out on the facts such a prima facie case of serious annoyance as

Cronin v. Bloemecke.

entitles him to a proper protection against the continuance thereof pending the final hearing. As to the dropping of balls upon complainant's premises, the affidavits of complainant and. his wife are, without specifying instances, positive and direct that this "frequently" occurred ; that when this occurred the players trespassed on his premises and damaged it and abused both of them when they remonstrated. Defendants submit affidavits of the manager and score-keeper of the games (whose place of observation is not stated) that the balls never drop on complainant's land and only occasionally on the lot of McAdam adjoining complainant, and that the players do not leave the grounds during the games. These affidavits do not fully meet complainant's case on this point, which rests on the danger and annoyance of dropping balls. I am not satisfied, on their present affidavits, that the manager and score-keeper are not mistaken as to the balls dropping on McAdam's lot instead of complainant's, and McAdam's lot is so near complainant's that if they are driven on McAdam's lot, there is evident danger of their being driven twenty-five or fifty feet further on to complainant's, and the trespassing on complainant's lands to recover balls by persons outside the grounds would equally occur whether the balls fell on the lot of McAdam or complainant. Defendants' affidavits show that the players personally may not recover the balls, but these positive affidavits of the complainant and his wife, as to the trespassing, are not overcome by these affidavits or by the general affidavits of police officers and others that trespassing is not allowed and has not occurred. These affidavits fail to show such continuous attendance on or near complainant's premises while the games are in progress, as to conclude upon these affidavits alone that the statements of complainant and his wife are false.

The same observations apply to the large number of affidavits of thoroughly credible persons submitted to show that as observed by them (from the places occupied by them at the games) the games were conducted in an orderly manner, with only occasional outbursts of applause and without indecent or profane outcries from players or persons within the grounds. The ques-

Cronin v. Bloemecke.

tion here is whether any such language and outcries are heard at complainant's house, and either from the players or others, either inside or outside the grounds. As to this the affidavits of complainant and his wife, Orben, Mr. and Mrs. Cope and Mrs. Mink, are positive and specific that the annoyance of such loud, indecent and profane noises in the vicinity of complainant's residence, from the grounds and outside, occur while games are in progress, and I think the defendants' affidavits do not overcome these specific charges. On the affidavits, therefore, I think complainant has made out a *prima facie* case of serious annoyance which entitles him to protection pending the final hearing, unless he is, for reasons set up by defendant, barred from this protection. But this protection, if given, should not extend to an absolute restraint against playing the games of base ball upon the park. A decree to this extent might not be proper, even upon final hearing, unless it appeared after full hearing that the games could not be carried on under defendants' management without creating a nuisance. In the present *status* of the case defendants' affidavits, which are necessarily somewhat general in their character, do not fully meet the specific charges of nuisance or annoyance made by complainant's affidavits; but, taking defendants' affidavits to be true, I think that they show a case where the nuisance or annoyance may probably be removed by the defendants with the aid of sufficient and proper police. Defendants make out a case which at least entitles them, pending the hearing, to show that the games can be so conducted as not to unreasonably annoy complainant and his family. An interlocutory injunction should not go further than to restrain the defendants, pending the hearing, from using or permitting to be used the premises called the Shooting Park mentioned in the bill, or any part thereof for the purpose of base ball games, so that a nuisance may be occasioned to the annoyance and injury of the complainant and his family at his residence or premises mentioned in the bill, either by the driving or dropping of balls upon his premises, or by trespassing from the players or spectators of the games, or by profane or indecent language upon the grounds, or from idle or disorderly persons in the streets collected by the games.

An injunction *pendente lite* should not extend to the noises upon the grounds incident to the playing of the games in a lawful and orderly manner, such as shouts of applause, for as to these a question as to acquiescence of complainant is shown, which disentitles him to an interlocutory injunction, although it may not bar relief on final hearing. This acquiescence arises, first, from the fact that complainant appears to have, at one time, requested and secured some privileges in the erection by defendants of a fence upon their own grounds, which would enable him and his friends to witness the games from his premises; and second, because games have been going on for some time at the park (a year or more), and a delay in applying for injunction will prevent an injunction *pendente lite* against the mere noises incident to the games. And an injunction cannot extend to nuisances created by the use on the grounds of vile or indecent language which is not audible at complainant's residence, or the unlawful or disorderly sale of liquor upon the premises. Protection against these nuisances, if they exist, must be sought in other tribunals. The whole extent of equitable jurisdiction is the protection of a person's dwelling-house or home against nuisances upon other premises, of so serious a character as to render his life therein uncomfortable.

It is objected that inasmuch as the fact of nuisance is disputed, complainant is not, under the rule settled in the *Coach Co. Case, 2 Stew. Eq. 299*, entitled to a preliminary injunction pending the hearing. But the jurisdiction of a court of equity in relation to protection of one's dwelling-house against nuisances which render it uncomfortable, stands upon a different basis from the kind of injury considered in the *Coach Co. Case*, and this right is one which has been constantly protected in this court by preliminary injunction in a proper case, even when the existence of the nuisance is disputed. Such injunctions were granted in *Ross* v. *Butler, 4 C. E. Gr. 294; Cleveland* v. *Citizens Gas Light Co., 5 C. E. Gr. 201; Meigs* v. *Lister, 8 C. E. Gr. 199*, and the general jurisdiction of equity to protect such rights is stated in *Leonard* v. *Hart, 15 Stew. Eq. 416* (*Court of Errors and Appeals, 1886*), in which the above cases are cited with approval on this point.

And in the present case there are two circumstances which make the case as one proper for preliminary injunction—*first*, this injunction can be directed in a form which will not interfere with the games if lawfully carried on ; and *second*, the protection to which complainant is entitled against the unlawful carrying on of games must be granted at once to be effectual, as the case could not be regularly heard before the close of the present base ball season.

Two other objections to the issuing of a preliminary injunction were raised. The first is the acquiescence of the complainant in the alleged nuisance by his request for facilities in viewing the games from his grounds, which facilities were for a time allowed him. I have indicated above my view of the extent to which this action, as well as his choice of location, should be considered in framing a preliminary injunction. The other objection which is urged specially against any injunction, based on the collection of disorderly persons outside of defendants' grounds, is that the nuisance is a public nuisance only and cannot be reached by injunction at the suit of complainant. But the right to relief in behalf of one who suffers private injury or annoyance from that which is a public nuisance is well settled. The only question is as to the character of the relief or remedy, and the right to relief by injunction against the special nuisance to one's dwelling-house by reason of crowds of disorderly persons upon the highways, drawn there by entertainments given by a third person upon his own lands for pecuniary profit, is based upon fundamental principles which have been recognized and enforced wherever they have been called in question. In *Rex* v. *Moore, 3 Barn. & Ad. 184* (which was an indictment), Lord Tenterden says : " If a person collects together a crowd to the annoyance of his neighbors, that is a nuisance for which he is answerable." In *Walker* v. *Brewster, L. R. 5 Eq. 25* (where an injunction was granted), it was held that a case of nuisance was established by the collection of a crowd on the highways in the neighborhood of grounds upon which entertainments, with music and fireworks, were given continuously for profit. In *Bellamy* v. *Wells, 39 W. R. 158*, cited in

*Barber* v. *Penley, 2 Ch. 457, 458 (1893)*, an injunction was granted against holding boxing or prize-fight entertainments, which had the effect of collecting large and noisy crowds in the streets outside of the premises.

I will advise a preliminary injunction in the form above indicated. The preliminary injunction will be granted upon the condition that if defendants desire to appeal from the order and file a notice of appeal within ten days, complainant shall consent to so speed the hearing of the appeal, by stipulations as to filing of answer or otherwise, as will enable the defendants to bring on the hearing of the appeal at the next term.