FIRST METHODIST EPISCOPAL CHURCH OF THE CITY OF CAPE MAY, NEW JERSEY,

*v.*

CAPE MAY GRAIN AND COAL COMPANY.

[Submitted July 19th, 1907. Decided July 20th, 1907.]

In a suit by a church society to restrain defendant from operating a roller-skating rink in a building adjacent to the church, it appeared that the noise from the rink was so great as to render it impossible to hold services in the church while skating was in progress, that the pastor and his family occupying the parsonage adjacent to the church were annoyed by the noise, and that the pastor was compelled to leave his home by reason of the noise during the time the rink was in operation and prevented from devoting his time to study necessary for his pastorate.—*Held,* to justify the granting of an injunction *pendente lite,* notwithstanding the affidavits of defendant that the rink was carefully managed and conducted without unnecessary disturbance.

On bill for injunction.

*Mr. James M. E. Hildreth,* for the complainant.

*Mr. Lewis T. Stevens,* for the defendant.

LEAMING, V. C.

The bill is filed by the First Methodist Episcopal Church of Cape May City to restrain defendant from operating a roller-skating rink in a building erected by defendant upon a lot adjacent to the church property. If the averments set forth in the bill and verified by the several affidavits accompanying the bill are to be relied upon as true, it is entirely manifest that the operation of the skating rink renders it impossible for the church to conduct its regular religious services without serious disturbance from the noise occasioned by the roller skating, and also by the orchestra which supplies music for the patrons of the rink; and also impossible for the pastor of the church to occupy the parsonage with any reasonable degree of comfort. It is admitted that the skating rink is in use every weekday between the hours of three and five-thirty o'clock P. M., and the hours of eight and ten-thirty P. M., and the regular church services are: A class meeting on each Tuesday evening; a prayer meeting on each Wednesday evening, and two class meetings on each Thursday and Friday evenings, each meeting beginning at 8 o'clock in the evening. The skating rink is not operated on Sundays.

The affidavits accompanying the bill disclose that the noise from the operation of the skating rink is so great that at times it prevents the members and patrons of the church from hearing the words of the preacher or the prayers which are offered by the members and visitors of the church, and renders the church services ineffective; that in the main audience room of the church, where it is the custom to hold services on Wednesday evenings during the summer season on account of the large church attendance requiring the use of that room, it is impossible to hold services during the time the skating is in progress; that the parsonage is adjacent to the church and is occupied by its pastor and his family as a home, and that the study of the pastor is within twelve and one-half feet of the skating rink, it

being in the second story of the parsonage and on the same level as the skating rink, which occupies the second story of the building of defendant, which building has twenty-three windows opening from the rink, six of which are on the side of the building nearest to the church property, and all of which are open during the time the skating rink is in operation; that the pastor is often compelled to leave his home by reason of the noise during the time the skating rink is in operation, and that the noise denies him the ordinary comforts of his home and prevents him from devoting his time to the study and meditation necessary for his pastorate, and renders sleep for him and his family impossible until after the skating rink is closed in the evening, and that he has determined to vacate the building on account of such noise unless the operation of the skating rink is discontinued, and has already notified the church to that effect.

The affidavits filed in behalf of the defendant satisfy me that the skating rink is well and carefully managed, and is conducted without rowdyism or unnecessary disturbance. But the affidavits of defendant entirely fail to disclose facts which can be held sufficient to throw substantial doubt upon the truth of the averments of the bill and its accompanying affidavits. The affidavit of Frank B. Sitley, the president of the defendant company, states that "the noise created in the operation of the rink is not of a character which would interfere with the comfort or health of any person," and states that "any noise which may be created in the operation of said rink is not of a nature which would interfere with the comfort or health of any person residing in the building adjoining said rink, or in any other place." The affidavit of F. Sydney Townsend, who resides on the same street at a point nearly opposite the skating rink, is to the effect that he has had occasion to retire for sleep at times in the evening before the hour of ten-thirty o'clock, and that "he has so far been unable to hear any noise from the said skating rink which disturbs him or prevents him from sleeping, and that the noise from the said skating rink is not as great as is the noise from locomotives puffing and blowing and ringing their bells at the station of the Atlantic City railroad adjoining

said skating rink building, nor of passing trolley cars on said Washington street, and that the noise is not of the character which would endanger the comfort or health of any person living in the building adjoining the same." The affidavit of Harry Hebenthal adopts the same language as that above quoted from the affidavit of Mr. Townsend. The remaining affidavit filed by the defendant is that of Irvin H. Eldridge, who is manager of defendant company. Mr. Eldridge testifies that he has been in the room of the parsonage nearest to the skating rink for more than a half hour when the skating rink was in full operation, and that "he was at the time unable to detect or hear any noise which might, could or would annoy any person, or interfere with their comfort or health in any manner whatever; that in the upper room of said church the noise from the skating rink cannot be heard at all; that in the main church room, when the windows of the church alone, or of the skating rink are closed, no noise can be heard in the said church while persons are skating on rollers in said skating rink." This embodies all the evidence supplied by defendant touching the character and extent of the noise produced. It will be observed that no witness denies the facts averred by the bill touching the character and extent of the noise in the church or parsonage upon his own knowledge excepting Mr. Eldridge, and he expresses no more than an opinion that the noise which he heard in the parsonage should not operate to disturb its occupants, and touching the noise in the church he fails to disclose whether he was ever in the church at a time when the rink was being operated. Upon the record, as it stands, I am obliged to accept the facts as stated by the several witnesses for complainant, and I am obliged to proceed upon the assumption that the noise occasioned by the operation of the skating rink by defendant company is of such a nature that religious services cannot be appropriately conducted in the church building of complainant, and that the parsonage cannot be occupied by its tenant with the reasonable comforts of life.

Under these facts the duty of the court is plain.

While defendant is entitled to the enjoyment of its property in the pursuit of a lawful business, that business must be con-

ducted with due regard to the well-recognized rights of surrounding property owners. When such business becomes creative of conditions which clearly render the appropriate enjoyment of surrounding properties impossible, the rights of others are invaded, and equity will restrain the persistent pursuit of such injuries. In the language of Chancellor Zabriskie, in *Ross* v. *Butler, 19 N. J. Eq. (4 C. E. Gr.) 294, 298:* "The law takes care that lawful and useful business shall not be put a stop to on account of every trifling or imaginary annoyance, such as may offend the taste or disturb the nerves of a fastidious or over refined person. But, on the other hand, it does not allow anyone, whatever his circumstances or condition may be, to be driven from his home, or to be compelled to live in it in positive discomfort, although caused by a lawful and useful business carried on in his vicinity. The maxim, *sic utere tuo ut alienum non lædas,* expresses the well-established doctrine of the law." In *Cleveland* v. *Citizens Gas Light Co., 20 N. J. Eq. (5 C. E. Gr.) 201, 205,* the same chancellor says: "Any business, however lawful, which causes annoyances that materially interfere with the ordinary comfort, physical, of human existence, is a nuisance that should be restrained." The decisions of this court dealing with cases of this class are numerous and need not be reviewed. It is sufficient to say that no case can be found the principles of which will justify a person in establishing a business adjacent to a church, the noise of which will render the continuance of the customary religious services in the church practically impossible, or which will interfere with such religious services to the extent of at times rendering it impossible for worshippers to hear the words of the preacher or the prayers which form part of such services, or which will render the occupancy of the church parsonage a burden.

The suggestions made in the affidavits on behalf of defendant that passing railroad trains, trolley cars and automobiles and wagons make louder noises than those produced from the operation of the skating rink are without force. These several means of conveyance have become recognized public necessities, and private interests have, in a measure, given way to the public good. In the present case we have a private business which is in no

sense a public necessity and that business so conducted as to render the appropriate enjoyment of complainant's property impossible. If the injury could be regarded as doubtful equity would not interfere. *Demarest* v. *Hardham, 34 N. J. Eq. (7 Stew.) 469, 475.* But the record clearly discloses a substantial invasion of a clear legal right resulting in permanent and serious injury, and I am obliged to allow an injunction *pendente lite.*