JAMES E. REILLEY et al.

*v.*

MICHAEL CURLEY et al.

[Decided December 14th, 1908.]

1. While a person is entitled to enjoy his property in pursuing a lawful business, it must be conducted with regard to the rights of surrounding property owners, and, when it creates conditions clearly rendering appropriate enjoyment of surrounding properties impossible, equity will restrain the injury.

2. Noise may constitute a nuisance, but, in determining whether it is a nuisance, its character and volume, and the time, place, and duration of its occurrence, and the locality must be considered.

3. Where the noise created by the operation of a steam engine in depositing stone on lots in a residence district is such as to render it impossible to converse in the neighboring houses or use adjoining premises for their customary purposes, its operation is a nuisance.

On application for preliminary injunction.

This is an application on behalf of Reilley and three other complainants against Curley and another to obtain a preliminary injunction.

The bill alleges that the complainants are owners or occupants, or both, of houses in Jersey City, in the neighborhood of Baldwin, Magnolia and Pavonia avenues and West and East streets; that this is a strictly residential neighborhood; that on East street, Curley, one of the defendants, has leased from Byron, the other defendant, two lots of land on opposite sides of that street; that he is engaged in hauling, to those lots, loads of broken stone; that these stones are in what are termed "boats;" that on the lots he has an engine and a derrick and a cable; that the cable is hitched to the "boats" and they are drawn up, by means of the steam engine, to the top of the pile and there dumped; that then the cable is allowed to run free and the "boats" are lowered onto the wagons.

It is charged that the noise attendant upon the operation of the engine and cable is so great as to seriously interfere with the dwellers in that neighborhood, and is a nuisance.

It is also charged that the engine is a second-hand one and in an unfit condition to be used. It is suggested that a muffler could be used upon the engine so as to minimize the noise, and that repairs could be made to it to do away with some of its present defects, which defects are alleged to be one of the causes of the noise complained of.

The answering affidavits are mainly directed to proving that the engine was the one ordinarily used for such operations, and that no more noise is attendant upon its operation than is usual in such operations, and that mufflers are not put upon such engines, and that no repairs are necessary to make the engine a proper one to be used with no unnecessary noise in this business. There is some slight attempt to show that it does not make much noise, but there is no direct denial of the allegations of the witnesses for the complainants that much noise does result from the operation.

An opportunity was afforded the defendant Curley to ex-

periment with a muffler and in such other way as he might think fit to adopt, but the proofs show that he did not succeed in minimizing the volume of noise, which was as great as theretofore.

*Messrs. Ziegener & Lane,* for the complainants.

*Messrs. Tumulty & Cutley,* for the defendants.

GARRISON, V. C.

It will be useful to consider several questions of law before dealing directly with the case at bar.

Since the defendant Curley is not engaged in improving the land on which he is piling the stone, but is merely using the land as a storage place for the stone, there is no occasion for the application of the principle that neighbors must endure the usual and customary discomforts arising out of the improvement by one of his property.

The first question relates to the principle to be applied to the rights of the respective parties, and this has been well summed up in a recent case in this court, as follows:

"While defendant is entitled to the enjoyment of its property in the pursuit of a lawful business, that business must be conducted with due regard to the well recognized rights of surrounding property owners. When such business becomes creative of conditions which clearly render the appropriate enjoyment of surrounding properties impossible, the rights of others are invaded and equity will restrain the persistent pursuit of such injury." *First M. E. Church of Cape May* v. *Cape May Grain and Coal Co. (Leaming, Vice-Chancellor, 1907),* 73 N. J. Eq. (3 Buch.) 257.

The next question is whether noise alone may constitute such a nuisance as to subject the one creating the same to restraint in equity. That such is the case I am convinced from the authorities not only in our state, but in many other jurisdictions.

Of course, the character and volume of the noise, and the time and duration of its occurrence, and the place where it occurs, and the surroundings thereof, are the important and determinative features. *Davidson* v. *Isham (Chancellor Williamson,*

1852), *9 N. J. Eq. (1 Stock.) 189; Wolcott* v. *Melick (Chancellor Williamson, 1856), 11 N. J. Eq. (3 Stock.) 207; Ross* v. *Butler (Chancellor Zabriskie, 1868), 19 N. J. Eq. (4 C. E. Gr.) 294* (at *p. 302*) *; Cleveland* v. *Citizens Gas Light Co. (Chancellor Zabriskie, 1869), 20 N. J. Eq. (5 C. E. Gr.) 201* (at *p. 205*) *; Demarest* v. *Hardham (Vice-Chancellor Van Fleet, 1881), 34 N. J. Eq. (7 Stew.) 470; Cronin* v. *Bloemecke (Vice-Chancellor Emery, 1899), 58 N. J. Eq. (13 Dick.) 313; Gilbough* v. *West Side Amusement Co. (Vice-Chancellor Pitney, 1902), 64 N. J. Eq. (19 Dick.) 31; Laird* v. *Atlantic Coast Sanitary Co. (Advisory Master Pitney, 1907), 73 N. J. Eq. (3 Buch.) 49; First M. E. Church* v. *Cape May Grain and Coal Co., supra; Powell* v. *Bentley & Gerwig Furniture Co., 12 L. R. A. 53* (with numerous cases in the notes) *; Hill* v. *McBurney Oil and Fertilizer Co., 112 Ga. 788; 52 L. R. A. 398; Froelicher* v. *Oswald Iron Works (La.), 64 L. R. A. 228,* and note; *Herring* v. *Wilton (Va.), 55 S. E. Rep. 546; 7 L. R. A. (N. S.) 349; 2 Wood Nuis. (3d ed.)* § *611.*

The defendant Curley placed the stress on his argument, so far as the law applicable to the case is concerned, upon the distinction suggested by the vice-chancellor in the case of *Hennessy* v. *Carmony (Vice-Chancellor Pitney), 50 N. J. Eq. (5 Dick.) 616.* The court in that case drew a distinction between that class of nuisances which affected air and light merely by way of noise and disagreeable gases and obstruction of light and those which directly affected the land itself or structures upon it. The only pertinence of the distinction relates to the degree of the alleged nuisance, the vice-chancellor suggesting that in the former class of cases a much greater degree is required to entitle the party to relief than in the latter; but the whole matter is, in my view, set at rest by the most recent decision of the court of errors and appeals upon this subject. The case of *Roessler & Hasslacher Chemical Co.* v. *Doyle,* in the supreme court, reported in *73 N. J. Law (44 Vr.) 521 (1906),* was affirmed in the court of errors and appeals—*74 N. J. Law (45 Vr.) 850 (1907),* by the unanimous vote of that court for the reasons set forth in the supreme court. In the supreme court, attention is called to the distinction above referred to, which apparently was first suggested by

Lord Westbury in *St. Helens Smelting Co.* v. *Tipping, 11 H. L. Cas. 642;* and Judge Reed, in writing the opinion, said (at *p. 528*): "These observations of Lord Westbury seem to have suggested the form of the requests on the trial of the present case. The court was asked to charge that the undisputed evidence was that the odors and noise merely affected the air and plaintiff's personal comfort; that the plaintiff's residence is not (*sic*) in a manufacturing locality, and that the odors were incident to the proper conduct of defendant's business; therefore, the plaintiff could not recover.

"But it is apparent that if the odors and noises existed as testified to by the plaintiff and his witnesses, they diminished the enjoyment, habitableness and value of his dwelling, and so injured his property. The request was properly refused.

"All the requests to charge which are grounded upon a distinction between personal discomfort and injury to plaintiff's habitation were based upon a difference which in this case did not exist.

"Indeed, no judge has ever suggested that personal discomfort received by an owner of property while residing therein would not afford a ground of action."

This case also reiterates the well-settled principle which lies at the foundation of all of this branch of the law, and which has been heretofore stated, namely, that the degree of personal discomfort is the determinative feature, and "in measuring the degree * * * all the surrounding circumstances must be taken into account in judging whether the degree is of sufficient importance to confer a right of action."

This brings me to a consideration of the facts of the case in hand.

The only dispute which it may fairly be said the proofs disclose concerns the condition of the machinery in use, the complainants alleging that it is second-hand and defective, and the defendants denying this.

There is practically no dispute of the complainants' testimony concerning the nature, extent and effect of the noise created by the defendant Curley's operation of the engine and cable and the "boats." The testimony of numerous witnesses on behalf of the

complainants, who all dwell in the neighborhood, is that from an early hour in the morning until six o'clock at night the noise of the engine and its operation practically precludes the possibility of conversing in the houses in the neighborhood when the windows of such houses are closed, and that the noise is such that the windows of the houses cannot be kept open.

· It seems to me clear, beyond possibility of successful refutation, that an occupant of a dwelling house in a strictly residential neighborhood, as this is, may be said to be deprived of the legitimate use of his property, or to have his property rights seriously invaded, if, during all of the day so much noise penetrates his dwelling from the operation, by a neighbor, of machinery as to render it impossible for him to converse in or to use his premises for their customary purposes.

I do not decide, because it is not necessary, that the defendant may not use these lots for the deposit of stone. I do not decide that a residential neighborhood is an improper place to store broken stone taken from excavations in other places. But it is important in the consideration to bear in mind that there are undoubtedly numerous places (where broken stone could be stored with the noise necessarily attendant on handling the same) which are so far removed from residences as not to seriously interfere with their use by their occupants.

The fact that the use of these lots for this purpose is temporary does not aid the defendants at all, but rather makes in favor of the complainants. If the defendants' purpose is, as they stated, merely to use these lots temporarily for this purpose, it would seem as if their duty, under the circumstances, was to seek some other place for such temporary use than a thickly-settled residential portion of the city.

Under all of the circumstances of this case I think that the complainants have proven a right requiring protection, and that the defendants have invaded that right so as to be restrained.

I will advise the issuance of a temporary injunction restraining the defendants from so operating the engine or any engine upon the premises in question as to cause noise of sufficient volume to penetrate the houses of the neighbors and destroy the peace and comfort of those dwelling therein.