The complainant complains that it is grievously annoyed and disturbed in the carrying on of its business by the vibration of its factory, due to the high-speed uniflow engine and generator in the defendant's factory, some two hundred and fifty feet away. The engine is used to generate electric power for the plant, and was installed after complainant was established. The defendant admits that its engine causes the vibration, but denies legal responsibility for the injury because the complainant's business, which it claims is singularly sensitive and conducted in a type of building particularly susceptible to vibration, is carried on in a factory district where such vibrations must be accepted and endured as the common lot of the neighborhood.
The complainant manufactures chlorine gas distributing machines for water sterilization, meters, gauges and various scientific devices, which, in designing and adjusting, require close calculation and minute deliberation, concentration of mind and a steady hand. It also conducts an experimental laboratory in which delicately adjusted appliances are used, and a drafting room for the drawing of plans incident to the business. These operations are conducted on the third or top floor of the building, where the executive offices are also located, the first and second floors being used for manufacturing and for stock rooms, where the heavy machinery is installed and the manual labor is performed. The building is in a factory neighborhood. The entire building vibrates, but sensibly and annoyingly only on the third floor, no inconvenience being experienced in the lower floors, owing, no doubt, to the character of the work carried on there. The oscillation of the building, while not great, is severe, the disturbance being caused by the incessant and accumulated vibrations of two hundred per minute — the speed of the engine. The proof is unmistakable that the department heads and their assistants are seriously hampered in their work, varying in degree according to their occupation — all by distraction, some physically as well. Study of problems and observations of tests are carried on with increased difficulty; *Page 410 
draftsmen work with trembling hands; stenographers' pads quiver, and so on throughout the force, resulting in material reduction in efficiency and consequent financial loss to the business, and injury to the property by the impairment of its utility for personal use, for rental or for sale. The injury, although the loss cannot be spelled out in dollars and cents, is substantial.
Two preliminary questions need attention. It is suggested that the complainant could escape much of the trouble by moving its executive office, laboratory and draft room to a lower floor. This would be impracticable; the various departments are suitably and accommodatingly located, one to the other, to obtain the best operating results. The suggested disarrangement of the shop scheme, to let out the defendant is, to put in mildly, gratuitous.
It is next claimed, and much testimony was offered pro andcon, that the complainant's building was inherently weak, structurally, and that, to that, much of the trouble is attributable. The effort was to show that the third floor was loose-jointed — that that type of building is loose-jointed. This is not made out. The building is of the approved mill-type construction, well put together and staunch, and there is no oscillation save that from vibrations due to the defendant's engine; nor is it shown that the vibrations are accentuated on the third floor by any defect in structure. Moreover, it seems to me, if it were made to appear that a mill-type structure were not as rigid as other types of factories, it would not be pleadable avoidance of the admitted offense of rocking the complainant's building.
The principal question in the case is whether the complainant is called upon to submit to the vexations because its mill is in a district given over to manufacturing. The circumstance that the complainant is seeking to protect its property and its business, delicate of operation in some branches, in a factory district, is criticised and much stressed, but the location impresses me to be of but little importance in considering the primary cause of complaint — the shaking of the building — which renders it unfit for the clerical forces on the *Page 411 
third floor, and impairs its value for both sale and rental. The defendant's position is, in effect, that the complainant has no right to carry on, in a factory district, a business requiring such quiet as its business does; that it should isolate itself, and that it assume all the risk of disturbance, present and future. I cannot see any logical basis for this. The complainant's factory is appropriately located in a factory district. Laboratories and drafting rooms and executive offices are common adjuncts to factories. The clerical force of any factory would suffer the same inconvenience and disturbance. But, even in a mill district, one must use his land consistently with his neighbor's reasonable use of his property. The golden rule maxim, "so use your own as not to injure another's," applies there as elsewhere. The character of the neighborhood affords no immunity for violating this rule of law of private property. The prevailing community smoke, smell, noise and vibrations are not license to smoke out, or drive out with stench, or drown with noise, or shake out a neighbor, and deprive him of the comfortable use of his land. The right of enjoyment is as sacred to him there and as guarded by law and protected by equity as elsewhere, save as to the ordinary conditions of the neighborhood.
The law guards jealously, alike, the enjoyment of all private property. The extent of the right of enjoyment may vary, but not the rule of protection. The right of enjoyment is surrendered in a factory district, only, to the extent of the inconvenience incident to the character of the business carried on there, no more. To be forced to suffer more is actionable. The ceaseless pounding of the vibrations from the defendant's engine against the walls of the complainant's mill is not incident to the neighborhood. The same annoyance would happen, under the same conditions, if both factories were on a farm. Before the defendant's power generating engine was installed there was no such disturbance, and it was then a factory district. Remove it and you still have a factory district, and with no sensible vibrations. It was not a neighborhood hazard to be anticipated, and is not one to be suffered. No other factory emits such disturbing vibrations. *Page 412 
Community vibrations must be endured, but vibrating a community is a nuisance.
The right to an injunction against the nuisance rests upon the grounds of injury to the business by the impairment of the efficiency of the employes, and injury to the property by being deprived of its utility, and thus appreciably impairing its value, and, consequently, its rental and sale value. It was upon the theory of the law stated that relief was granted, on the first ground, in Demarest v. Hardham, 34 N.J. Eq. 469, and, on the second ground, in Hennessy v. Carmony, 50 N.J. Eq. 616,
and in Roessler Hasslacher Chemical Co. v. Doyle,73 N.J. Law 521, where damages were awarded. In Hennessy v.Carmony, supra, where the property was not located in a factory district, Vice-Chancellor Pitney held, upon authority, that the law does not tolerate interference with the enjoyment of land, appreciably impairing its usefulness and value, and that to shake your neighbor's house, to his discomfort, is actionable injury. In the Roessler Hasslacher Case the property protected was in a factory district. In Demarest v. Hardham, supra, the property was located in a factory district, and while the court held that an injunction would not go to the owner complainant, because the safety and stability of his building was not endangered by the vibration complained of, relief was granted to the partnership, complainants, because they were disturbed in carrying on their trade.
The intimation in the brief, the point was not argued, that the vibrations are uniform through the ground throughout the neighborhood, is immaterial. That no other mill owner or neighbor has complained is beside the question. The vibration causes special injury to the complainant's business and property, and, though others may suffer uncomplainingly, the complainant is not obliged to. Roessler Hasslacher Chemical Co., supra.
It is not an answer that defendant's engine is of standard type and installed on a foundation of approved construction. This is not a negligence case. It is enough that the engine causes the injury. That the vibrations are more particularly directed towards the complainant's plant than elsewhere, *Page 413 
due, possibly, to earth formation, is not the complainant's fault. Besides, the infliction of the injury is entirely unnecessary, because it can be easily avoided by insulating the foundation; this can be done at a moderate cost.
An estoppel is also relied upon. It appears that the offending engine was installed by a former owner of the defendant's plant, to whose ownership the defendant company succeeded through a bankruptcy sale, and that the complainant suffered annoyance then as it does now, and it is contended that it was the duty of the complainant to give notice to the defendant before it purchased. There was no such incumbent duty, but, assuming that there was, it appears that the present management of the defendant company was interested in the defunct company, and knew of the nuisance through complaints to that concern made by the complainant.
There will be an injunction. The defendant will be given a reasonable time to make repairs.