Kraeuter Company are tool manufacturers in Irvington. Their forge shop contains twenty-eight drop hammers, varying in size from four hundred to two thousand pounds, falling weight. The noise from the hammers is claimed to be a nuisance to habitation. Vibration is also charged, but it is established that, sensibly and materially, there is none. The noise is of the intensity to be expected from a dozen and more heavy drop hammers, all in action. That the complainants, and complaining witnesses called by them, are annoyed and distressed in their homes there can be no doubt. Nor can there be any question that their non-complaining neighbors, some living in as close and others in closer proximity to the source, are not bothered, and suffer no inconvenience. The difference, in effect, is apparently due to difference in temperament, physical and nervous condition, and the circumstances under which the noise is experienced. The factory, with present methods, has been in operation since 1917. It is in a locality which for many years has been devoted to foundries, smelters, forges, saw mills, railroad yards, mills and elevator factories, stove and range factories and the like, and which long has been known as "Enterprise Hill." The industries are contiguous. This mill center was recently zoned by the municipality for heavy industries, and while the municipal action is not influential, it is indicative of the character of the neighborhood. The locality was promoted industrially before the coming of the houses now surrounding the mill section, which, mostly, are of the type usually found in factory districts, and, as a rule, are occupied by the families of workers. The case is not one of factory invasion of a residential neighborhood, but, one where the defendants were invited by the industrial character of the place, dedicated to heavy industries, to locate their plant, and where the prospect held out, as it were, assurances of immunity from complaint of discomfort customary from mill and factory annoyance.
Where great industrial works are segregated, as they are here, in an appropriate locality, and are circumspectly carried *Page 415 
on, during working hours, noise, characteristic of the enterprises, must be endured by those who by choice or of necessity live in the vicinity. It is unfortunate that such dwellers are denied the comforts afforded in communities more remote from factory districts, but their misfortune in this respect is purely social, not legal, and not cognizable in equity. The maxim "So use your own as not to injure another" is not infringed in such neighborhoods, if the business is not a nuisance per se, or the noise is not greater than ordinarily comes from carefully carrying on a lawful trade. That the noise from the defendant's factory is greater and more constant than that which comes from other noisy plants in the group, and possibly is the major contributor to the concert of noises coming from the mill section, is not a distinction that makes for the extinction of their works, as a nuisance, if the noise is no more than necessarily made in cautiously conducting the business. It is conceded that the noise is not inconsistent with the nature of the works, and it may be added that the works are perfectly consistent with the surroundings. Equity is always reluctant to interfere on the ground of nuisance with a lawful trade lawfully carried on, and it would have to be an annoyance of exceptional aggravation to move the court to enjoin an industry in a factory district at the instance of householders adjacent to the district. It would seem that in such surroundings the maxim is more nearly apposite as between factory owners than as between them and neighboring dwellers. Wallace Tiernan v. UnitedStates Cutlery Co., 97 N.J. Eq. 408; 3 N.J. Adv. R. 1904. This is borne out by the present-day policy of governmental segregation of manufactures in our larger municipalities, and it must be regarded as the accepted rule, in the spirit of the age of business activity and in the interest of public welfare, that the householder in and near industrial centers subordinates himself and submits to the discomforts incident to industrial life.
An injunction restraining the defendants would inflict upon them an irreparable loss; it would result in the closing of their factory and the destruction of their business, involving *Page 416 
an investment of $300,000 and the withdrawal from commerce of an annual turnover of a million and a half of dollars. The judgment, however, is not rested on the weight of inconveniences (Hennessy v. Carmony, 50 N.J. Eq. 616), but upon the pure equities of the case, which find support in the wealth of literature on the subject, of which some is to be found inWolcott v. Melick, 11 N.J. Eq. 204; Cleveland v. CitizensGas Light Co., 20 N.J. Eq. 201; Duncan v. Hays Greenwood,22 N.J. Eq. 25; Gilbough v. West Side Amusement Co., 64 N.J. Eq. 27; Seligman v. Victor Talking Machine Co., 71 N.J. Eq. 697;affirmed, 72 N.J. Eq. 946; Reilley v. Curley, 75 N.J. Eq. 57;Kroecker v. Camden Coke Co., 82 N.J. Eq. 373; Chambers v.Walker, 33 N.J.L.J. 23; Straus v. Barnett, 140 Pa. 111; Eller
v. Koehler, 68 Ohio St. 51; 67 N.E. Rep. 89; Hafer v. Guynan,7 Pa. Dist. R. 21; Gilbert v. Showerman, 23 Mich. 448;Lindblom v. Purity Ice and Refrigerating Co. (1920),217 Ill. App. Rep. 306; Lohmuller v. Samuel Kirk Son Co.,133 Md. 78; Huckenstein's App., 70 Pa. 102; Rushmere v. Polsue Alfieri, 1 Ch. L.R. (1906) 234.
The complainant has not made out a case of nuisance which calls for the drastic remedy by injunction, and the bill will be dismissed.