Complainants, forty-eight in number, are residents of the village of South Orange and bring this bill of complaint praying injunction to restrain the defendants from operating a stone quarry in such manner as to constitute a nuisance.
The defendant Elizabeth G. Kernan is the widow of Michael Kernan, deceased, and the defendants Mary Kernan and Savings Investment and Trust Company as trustees under the last will and testament of Richard L. Kernan, deceased, are the owners, as tenants in common of the premises upon which the stone quarry is located. The quarry was originally operated by the deceased husbands of Elizabeth G. Kernan and Mary Kernan and has been in operation for approximately thirty-four years.
Complainants allege that their homes are shaken, jarred and damaged by the blasting of stone at the quarry; that the blasting casts stones upon the lands of some of the complainants endangering the safety of complainants; that their peace and comfort is disturbed and their health affected by the combined noise of the blasting, the operation of the engines, drills, steam whistle and the noise and vibration resulting from the blasting.
With few exceptions, complainants established their homes in the vicinity of the quarry about the year 1931. Since 1935 complainants charge there has been marked expansion and *Page 414 
increase in business activity at the quarry; that the stone crushers have been operated longer hours and the blasting of rock has occurred with greater frequency and intensity; that at various times during the past three or four years complainants complained to the defendants and to the local municipal authorities without relief; that the blasting of stone and the vibration resulting therefrom has caused damage to their homes; that in particular on November 23d 1938, the shock of one of these blasts was so great as to rock the immediate community; that the blasting of rock by defendants from time to time has caused the foundation walls, ceilings and roofs of complainants' houses to become cracked, and in other respects damaged; that complainants' peace and comfort is not only disturbed but that the enjoyment and use of their homes have been destroyed.
The method followed by the defendants in quarrying stone is to remove the surface earth and a stratum of shale from the limestone, after which holes are drilled below the floor thereof with steam drills, and the stone then blasted with explosives deposited in said holes; fragments too large to handle are broken up by light charges of dynamite or other mechanical methods, and the stone is then loaded by steam shovels into trucks which convey the stone to crushers located on the premises where the stone is crushed and separated into various sizes and then sold for commercial purposes among others to the defendant Kern-O-Mix, Inc., a corporation having its place of business on the quarry premises and which corporation the defendant Elizabeth G. Kernan organized and in which she appears to hold all the stock with the exception of two shares.
The allegations of the bill of complaint are supported by approximately fifty affidavits of complainants and their witnesses, photographic exhibits of the damage allegedly caused by the blasting, and by the affidavits of a number of experts who attribute the damage to the homes of complainants to the vibration and concussion caused by the blasting of stone at the quarry. The testimony of some of these affiants is in substance to the effect that when these blasts occur their houses rock from their foundations, doors and windows rattle, *Page 415 
pictures hung from the walls tilt and the plastered walls crack. I shall not recite in detail all of the facts tending to prove the above but shall take occasion to refer to a few typical instances.
Mrs. Rogers testifies that during one of these blasts a large antique mirror fell to the floor. Miss Lee, a maid in the home of complainant Walowit, says, "the house trembled and the jar was so great that the glassware in the cabinet shook and several covers were thrown from the pots which were on the kitchen stove." Mrs. Cummings says "the pots and pans in the kitchen rattle * * *. During some of the blasts it felt as if there were an exploison in our cellar and the effect was one that made me feel as though the cellar floor was being pushed up through the house." Mrs. Herdman testified that while she was living in the house now owned by a Mr. Graham "a loud blast occurred * * * and simultaneously I suffered great pain in both ears which did not abate. My hearing was also seriously interfered with. I was obliged to go to a Dr. Campbell, an ear specialist, residing on Fullerton avenue, Montclair, New Jersey, who informed me that the concussion had pushed in both my ear-drums. Dr. Campbell was obliged to give me painful treatments to restore the distended ear-drums to normal. I have at no other time experienced such a condition and I can attribute it only to the blast and concussion coming from the Kernan quarry."
Defendants' answering affidavits are furnished for the most part by persons who say concerning the blasting of stone, that they either did not hear the blast or were not "annoyed" thereby or as some say "not annoyed to any extent." Such negative testimony produced by the defendants can have little or no effect. Seligman v. Victor Talking Machine Co., 71 N.J. Eq. 697; 63 Atl. Rep. 1093; affirmed, 72 N.J. Eq. 946;73 Atl. Rep. 1118; Rausch v. Glazer, 74 Atl. Rep. 39; First MethodistEpiscopal Church, c., v. Cape May Grain and Coal Co., 73 N.J. Eq. 257; 67 Atl. Rep. 613; Reilley v. Curley, 75 N.J. Eq. 57;71 Atl. Rep. 700; Kroecker v. Camden Coke Co., 82 N.J. Eq. 373;88 Atl. Rep. 955.
Other affidavits are by experts. So far as the opinion testimony of experts on either side of the issue with respect to *Page 416 
what caused the cracking of the foundation walls, ceilings and roofs of complainants' residences is concerned, its weight is minimized in the face of the testimony of complainants and other residents affected. They were in the position to observe the condition of their homes before and after the various blasts and the effect, if any, by way of damage to their homes caused by the vibration resulting from the blasts.
The defendants in their answer say "that the method of blasting employed by them in blasting rock from the face of the rock cliff is the most approved and widely used and accepted method of blasting and is designed to and has the effect of minimizing
the amount of sound and vibration produced by said blasting * * * that the method of blasting used by them to break up individual boulders which have already been blasted from the face of the cliff is the most approved and generally accepted method of breaking up such boulders * * *." (Italics mine.) Also defendants say their machinery is of the latest design and constructed to minimize the amount of noise incident to the operation conducted at the quarry.
The defendants further answering say that because their quarry business was in operation for some time before complainants acquired residence in the neighborhood thereof "the rights of the complainants, if any, to object to the operations of the quarry are subordinate and subject to the rights of the defendants," and that by reason thereof the complainants are barred from relief. Other defenses set up are laches.
The matter is before the court on the return of an order to show cause issued upon the filing of the bill of complaint, defendants' answering affidavits and the defendants' answers.
Considering all of the testimony and the defendants' admission that the blasting of stone at their quarry causes sound andvibration, are complainants entitled to preliminary injunction restraining defendants from so conducting their business by blasting stone as not to cause the houses of complainants tovibrate and from conducting their business in such a manner as not to cause injury or damage of any kind to complainants' property? Such injunction will not have the effect of preventing the defendants from operating their business, *Page 417 
if, indeed, it can be operated without causing by blasting the homes of complainants to vibrate and their property to be injured. If the business of defendants cannot be operated without causing vibration, resulting in damage to the property of complainants, there is no right in defendants to continue their business. If as contended for upon the argument and in the brief of counsel for the defendants that the defendants will be greatly injured by such injunction, such argument is in itself a concession that the defendants cannot operate their quarry without creating a nuisance.
Vibration producing the results complained of is clearly a nuisance. Hennessy v. Carmony, 50 N.J. Eq. 616, 630;25 Atl. Rep. 374. "Community vibrations must be endured, but vibrating a community is a nuisance. The right to an injunction against the nuisance rests upon the grounds of injury * * * to the property by being deprived of its utility, and thus appreciably impairing its value, and, consequently, its rental and sale value. * * * It is not an answer that defendant's engine is of standard type and installed on a foundation of approved construction. This is not a negligence case. It is enough that the engine causes the injury."Wallace Tiernan Co. v. U.S. Cutlery Co., 97 N.J. Eq. 408,412; 128 Atl. Rep. 872; affirmed, 98 N.J. Eq. 699;130 Atl. Rep. 920.
Vibration that caused the windows and doors of a house to rattle in their casings, dishes on the shelves to rattle and move on one another, and the walls to crack, and which was distinctly felt by persons in the house was enjoined. Hennessy v.Carmony, supra.
The jurisdiction of this court "in relation to protection of one's dwelling-house against nuisances which render it uncomfortable, stands upon a different basis from the kind of injury considered in the Coach Co. Case, 29 N.J. Eq. 299, and this right is one which has been constantly protected in this court by preliminary injunction in a proper case, even when the existence of the nuisance is disputed. Such injunctions were granted in Ross v. Butler, 4 C.E. Gr. 294; Cleveland v.Citizens Gas Light Co., 5 C.E. Gr. 201; Meigs v. Lister, 8C.E. Gr. 199, and the general jurisdiction of equity to protect *Page 418 
such rights is stated in Leonard v. Hart, 42 N.J. Eq. 416,420;" Cronin v. Bloemecke, 58 N.J. Eq. 313, 317;43 Atl. Rep. 605.
Upon a preliminary hearing, where the facts are practically undisputed (as is the case in the instant matter at least with respect to sound and vibration) and where a final hearing would be but a repetition of the preliminary hearing, relief is granted, even in cases requiring a mandatory injunction. O'Hara
v. Nelson, 71 N.J. Eq. 161, 173; 63 Atl. Rep. 836. See, also,Gilbough v. West Side Amusement Co., 64 N.J. Eq. 27;53 Atl. Rep. 289.
Nor is the fact that the quarry was in operation for some time before complainants acquired their residences a bar to the relief sought. "Every right, from absolute ownership in property down to a mere easement, is purchased and holden subject to the restriction that it shall be so exercised as not to injure others. Though at the time it be remote and inoffensive, the purchaser is bound to know at his peril that it may become otherwise by the residence of many people in its vicinity, and that it must yield to by laws and other regular remedies for the suppression of nuisances. In such cases, prescription, whatever the length of time, has no application. Every day's continuance is a new offense, and it is no justification that the party complaining came voluntarily within its reach. * * * If population, where there was none before, approaches a nuisance, it is the duty of those liable at once to put an end to it."Northwestern Fertilizing Co. v. Hyde Park, 97 U.S. 1036; Boardof Health v. Lederer, 52 N.J. Eq. 675; 29 Atl. Rep. 444; King
v. Morris and Essex Railroad Co., 18 N.J. Eq. 397.
Nor is the defense of laches available to the defendants as hereinbefore mentioned. Speaking of laches in Rowland v. NewYork Stable Manure Co., 88 N.J. Eq. 168, 175; 101 Atl. Rep. 521,
Vice-Chancellor Backes held: "It would be most inconsiderate to hold that having, for the past eight years, lived in a filthy atmosphere, inhaling and enduring the stench from the defendant's business without complaint, they must patiently submit to further discomfort, and as long as the defendant sees fit to impose upon them. Every day's *Page 419 
continuance is a new or fresh nuisance. * * * Nor are the complainants equitably estopped by acquiescence."
Neither will the extent of the represented investment by the defendants in their business deter the court from lending its aid and assistance to the complainants. Rowland v. New York StableManure Co., supra; Board of Health of Lyndhurst Township v.United Cork Cos., 116 N.J. Eq. 4; 172 Atl. Rep. 347; affirmed,117 N.J. Eq. 437; 176 Atl. Rep. 142.
I will advise preliminary injunction restraining defendants from conducting and operating their quarry property in such manner as to cause, by blasting of stone, the houses of complainants, or any of them, to vibrate, and from blasting stone in said quarry property in such manner as to cause injury or damage of any kind to the houses of complainants or any of them.