RICHARD HENNESSY

v.

CYRUS P. CARMONY et ux.

1. There is a distinction between injuries which affect the air merely by way of noises and disagreeable gases resulting in personal discomfort and those which injuriously affect the land itself or structures upon it. As to the former, each person living in society must submit to a degree of discomfort depending in some measure upon the circumstances of his residence. As to the latter, the owner or occupant of land is entitled to enjoy it free from any direct injury which will appreciably affect its value.

2. A continuing injury to land appreciably affecting its value will be enjoined by this court.

On bill to restrain nuisance. Final hearing on the pleadings and oral proofs.

*Mr. John W. Wartman,* for the complainant.

*Mr. Samuel H. Grey,* for the defendants.

PITNEY, V. C.

The object of the bill is to restrain a private nuisance.

The complainant is the owner of a small lot of land, about eighteen feet front and rear by about ninety-six feet deep, in the city of Camden, fronting on the west side of South Eighth street, about midway between Spruce street on the north and Cherry street on the south. Upon this lot is situate a small dwelling-house, composed of a main or front part of brick about fifteen feet front by thirty feet deep, two stories high, leaving a passage-way of three feet on the northerly side, and having a wooden extension or kitchen, about ten by thirty-five feet, two stories high, in the rear. The rear of this structure is thirty-one and a half feet from the rear line of the lot. The ground lying to the north and west of this lot is owned by the defendants, or one of them, and is used for a dye-works for coloring cotton and other materials. In the process of dyeing it, of course, becomes neces-

Hennessy v. Carmony.

sary to dry those materials, and in order to hasten this process use is made of two machines, called in the evidence "whizzers," into which the wet material is placed, and which, by being revolved at great speed, drive out the water by centrifugal force. These machines are driven by two small engines attached to them directly, without intermediate gearing, so that the engines must make the same number of revolutions as do the whizzers, and the more rapid the revolution, the more rapid the process of drying. The principal subject of litigation was as to the effect upon the complainant's premises of these machines.

[The discussion of the evidence is here omitted.]

The serious and troublesome question in the case is as to whether the vibration established is of such a degree as to entitle the complainant to the aid of this court.

Upon reason and authority I think there in a clear distinction between that class of nuisances which affect air and light merely, by way of noises and disagreeable gases, and obstruction of light, and those which directly affect the land itself, or structures upon it. Light and air are elements which mankind enjoy in common, and no one person can have an exclusive right in any particular portions of either, and as men are social beings, and by common consent congregate and need fires to make them comfortable and to cook their food, it follows that we cannot expect to be able to breathe air entirely free from contamination, or that our ears shall not be invaded by unwelcome sounds. Thus, my neighbor may breathe upon my land from his, and the smoke from his house fire and the vapor from his kitchen may come on to my land, or he may converse in audible tones while standing near the dividing line, and all without giving me any right to complain. So my neighbor and I may build our houses on the line between our properties, or have a party wall in common, so that we are each liable to hear and be more or less disturbed by the noise of each other's family, and cannot complain of it. In all these matters of the use of the common element—air—we give and take something of injury and annoyance, and it is not easy to draw the line between reasonable and unreasonable use in such cases, affecting, as they do, mainly the comfort and in a small degree only the

health of mankind. In attempting to draw this line we must take into consideration the character which has been impressed upon the neighborhood by what may be called the common consent of its inhabitants.

But when we come to deal with what is individual property, in which the owner has an exclusive right, the case is different. While my neighbor may stand by my fence on his own lot and breathe across it over my land, and may permit the smoke and smell of his kitchen to pass over it, and may talk, laugh and sing or cry, so that his conversation and hilarity or grief is heard in my yard, he has no right to shake my fence ever so little, or to throw sand, earth or water upon my land in ever so small a quantity. To do so is an invasion of property and a trespass, and to continue to do so constitutes a nuisance. And if he may not shake my fence or my house by force directed immediately against them. I know of no principle by which he may be entitled to do it by indirect means.

I think the distinction between the two classes of injury is clear. At the same time it would seem that it has, in appearance at least, been frequently overlooked by able and careful judges, and the same rules as to the degree of the injury which will justify judicial interference applied to each class.

The distinction between the two classes of injuries was pointed out by Lord Westbury in *St. Helen's Smelting Co.* v. *Tipping, 11 H. L. Cas. 642; S. C., 11 Jur. (N. S.) 785; 116 Eng. Com. L. 1093.*

The charge of the judge under review is given in full in the report in the *Jurist*, and in the *addenda* to *4 Best & S.*, printed in *116 Eng. Com. L. 1093*, while a mere abstract is given in the report in the queen's bench (*4 Best & S. 608*) and in the official report in the house of lords. *11 H. L. Cas. 642.* One of the head notes of the official report (*11 H. L. Cas. 642*) is this: "There is a distinction between an action for a nuisance in respect of an act producing a material injury to property and one brought in respect of an act producing personal discomfort. As to the latter, a person must, in the interest of the public generally, submit to the discomfort of the circumstances of the place and the trades

carried on around him ; as to the former, the same ruling would not apply."

Lord Westbury, in moving the judgment of affirmance, said : " In matters of this description it appears to me that it is a very desirable thing to mark the difference between an action brought for a nuisance upon the ground that the alleged nuisance produced material injury to the property and an action brought for a nuisance on the ground that the thing alleged to be a nuisance is productive of sensible personal discomfort. With regard to the latter, namely, the personal inconvenience and interference with one's enjoyment, one's quiet, one's personal freedom, anything that discomposes or injuriously affects the senses or the nerves, whether that may or may not be denominated a nuisance, must undoubtedly depend greatly on the circumstances of the place where the thing complained of actually occurs. If a man lives in a town, it is necessary that he should subject himself to the consequences of those operations of trade which may be carried on in his immediate locality, which are actually necessary for trade and commerce, and also for the enjoyment of property, and for the benefit of the inhabitants of the town and of the public at large. If a man lives in a street where there are numerous shops, and a shop is opened next door to him, which is carried on in a fair and reasonable way, he has no ground for complaint because to himself individually there may arise much discomfort from the trade carried on in that shop. But when an occupation is carried on by one person in the neighborhood of another, and the result of that trade, or occupation, or business, is a material injury to property, then there unquestionably arises a very different consideration. I think that in a case of that description the submission which is required from persons living in society to that amount of discomfort which may be necessary for the legitimate and free exercise of the trade of their neighbors, would not apply to circumstances the immediate result of which is sensible injury to the value of the property."

This opinion was expressly concurred in by the other judges who sat in that case. The sole question before the court was whether the defendant below—the plaintiff in error—had any

reason to complain of the charge of the judge, and not whether, if the verdict had been for the defendant, the plaintiff below might not have taken exception to it; and the effect of the judgment of Lord Westbury was, as it seems to me, to hold that the charge was too favorable to the defendant below, who was plaintiff in error. This aspect of the case was noticed and pointed out by Lord Cockburn in the queen's bench, who said (*4 Best & S. 615*) that if the summing up of the judge "was wrong in any respect the error is one of which the other side is the only party entitled to complain." It is not quite safe, therefore, as it seems to me, to rely upon the charge of the judge there under review as an accurate statement of the law, without taking into consideration this circumstance.

In my judgment, the distinction taken by Lord Westbury in that case is founded in reason and should be observed, and, in looking at the language used by the judges in other cases, we ought to observe whether it was used in reference to a case of injury through the air by noise or offensive odor, or whether it was one affecting the land itself. Thus, in *Sturges* v. *Bridgman* *(1879), L. R. (11 Ch. Div.) 852*, where the injunction was granted, the case was one mainly of noise, and although the element of vibration was mentioned, the judges dealt altogether with the matter of noise. The same may be said of *Gaunt* v. *Fynney* *(1872), L. R. (8 Ch. App.) 9*, where the injunction was refused.

The question here, then, is not so much whether the effect of the noise and vibration caused by the rapid revolution of the defendants' machines is to render complainant's house less comfortable to live in (though that is a matter to be considered), but rather whether the complainant's land and dwelling is sensibly and injuriously affected by the vibration. If it be so, then it seems to me he ought, in the absence of any equitable defence, to be entitled to relief.

The familiar ground on which the extraordinary power of the court is invoked in such cases is that it is inequitable and unjust that the injured party should be compelled to resort to repeated actions at law to recover damages for his injury, which, after all in this class of cases, are incapable of measurement; and I pre-

sume to add the further ground that in this country limiting the
injured party to such remedy must result in giving the wrong-
doer a power not permitted by our system of constitutional gov-
ernment, viz., to take the injured party's property for his private
purposes upon making, from time to time, such compensation as
the whims of a jury may give. This ground of equitable action
is of itself sufficient in those cases where the injury, though not
irreparable, promises to be repeated for an indefinite period, and
so is continuous in the sense that it will be persevered in indefi-
nitely. See *Ross* v. *Butler, 4 C. E. Gr. 302.*

Several matters have at various times and on various occasions
been held to stand in the way of granting an injunction in this
class of cases. The principal one is what may be called the *"de
minimis"*—"balance of injury" and "discretion" doctrine. It
has been said, and held on some occasions, that where the injury
to the complainant by the continuance of the nuisance is *small*
and the injury to the defendant by its discontinuance is *great,* the
court will consider that circumstance, and if the *balance* is greatly
against the complainant will, in the exercise of a sound *discretion,*
refuse the injunction and leave the complainant to his remedy at
law. As instances in which this notion has been advanced in
this state may be cited *Quackenbush* v. *Van Riper, 2 Gr. Ch. 350 ;*
*Van Winkle* v. *Curtis, 2 Gr. Ch. 422 ; Railroad Company* v.
*Prudden, 5 C. E. Gr. 530,* in the court of errors and appeals ;
and in the later case of *Demarest* v. *Hardham, 7 Stew. Eq. 469.*

The two cases in *2 Gr. Ch.,* as well as *Railroad Company* v.
*Prudden,* were instances of interlocutory applications, and distin-
guishable on that ground ; and further, in *Railroad Company* v.
*Prudden,* the injunction was dissolved on the express ground
that the complainant's right was not clear. And (*5 C. E. Gr.,*
at *p. 540*) the learned judge says : "The defendants will not
occupy, with the proposed track, any of the complainants' lands.
For the contingent and consequential damages he may suffer
from any unlawful interference with his enjoyment of his prop-
erty, he has his remedy by action at law, whenever, and as often
as loss or damage ensues ; *and if the use of a railroad in front
of his premises becomes a nuisance, or the aggression proves to be*

a permanent injury, without an adequate remedy at law, then the court will be competent to administer equitable relief by injunction to prevent its continuance or for its removal. But a strong case must be presented, and the impending danger must be imminent and impressive, to justify the issuing of an injunction as a precautionary and preventive remedy." And in adverting to this opinion in *Carlisle* v. *Cooper*, *6 C. E. Gr. 584*, the same learned judge distinguishes it from the case of a final hearing for the abatement of a permanent and continuous nuisance. *Demarest* v. *Hardham* was on final hearing, and while some expressions of the learned vice-chancellor there found standing by themselves may seem to hold that the granting an injunction on final hearing as part of the decree rests in the discretion of the chancellor, I think that, taking what was said on that topic as a whole, it does not bear that interpretation.

With regard to the insignificancy of the injury to the complainant, it seems to me it cannot be taken into account if it be appreciable and such as would clearly entitle him to damages at law. That consideration was urged and overruled, and with it, as I think, the *balance of injury and convenience* notion above stated by the court of errors and appeals in *Higgins* v. *Water Co., 9 Stew. Eq. 538* (at *p. 541*), which is the latest expression by that court on this subject. At *page 544* the learned chief-justice deals with it, and finally disposes of the doctrine that in such cases the court will consider and balance the conveniences, and, if that balance be greatly against complainant, leave him to his remedy at law by repeated suits for damages. He uses this language:

"The next position taken in behalf of the defendant is, that even if the subtraction of this water is to be held to be wrongful with respect to the complainant, still a court of equity will not give relief by way of injunction but will leave the parties injured to their remedy at law.

"If this were an application for a preliminary injunction it is clear that an objection of this kind should prevail, for the act which the defendant threatens to do is obviously not of a character to inflict any irreparable injury. But after a court of equity

has entertained a bill, and, instead of sending the case to a trial at law, has itself tried the questions of fact involved, and settled the legal right in favor of the complainant, it certainly would be a result much to be deprecated, if, at such a stage of the controversy, it was the law that the chancellor were required to say to such a complainant, ' Your right is clear ; if you sue at law you must inevitably recover, and after several recoveries, it then will be the duty of this court, on the ground of avoiding a multiplicity of suits, to enjoin the continuance of this nuisance ; still you must go through the form of bringing such suits, before this court of equity can or will interfere.' In those cases in which, to the mind of the chancellor, the right of the complainant is clear, and the damage sustained by him is substantial, so that his right to recover damages at law is indisputable, and the chancellor has considered and established his right, I think it not possible that any authority can be produced which sustains the doctrine contended for by the counsel of the defendant. For an example of such a proceeding we are referred to the case of *Earl of Sandwich* v. *The Great Northern Ry. Co., L. R.* (*10 Ch. Div.*) *707*, but the authority is not relevant to the point, for the vice-chancellor expressly states that the complainant had suffered no damage. Speaking of the complainant, he says : ' What injunction is he entitled to ? Is there any damage done to him ? It is not pretended that there is any damage done to him.' This case, therefore, belongs to that class before referred to, where an abstraction of water has been made in a reasonable manner by a riparian proprietor, and where such abstraction does not operate to the detriment of other proprietors, and, as I have already stated, under such circumstances no wrong is done if the transaction be measured either by the rules of law or of equity. But in the present case, if the injunction be refused it must be refused in the presence of the facts that there has been a diminution of this stream to the substantial detriment of the complainant, and a judgment on final hearing to that effect, so that a recovery would follow as a matter of course if suits at law should be brought. Under such circumstances of fact, has a court of equity ever promoted such useless litigation ? It is impossible to conceive

what benefit would result to either of the litigants from such a course. If this water company is doing a legal wrong, injurious to the complainant, such wrongful conduct must, if persisted in, either now or hereafter, be restrained in equity. After the rights of these parties have been settled in this court, suits at law, founded in this diversion of this stream, would be mere assessments of damages. Judgments in such actions, as a matter of course, must pass in favor of the complainants. To be prohibited, therefore, from doing the wrongful act which must lead to such results, cannot be regarded, with respect to the defendant, as anything inequitable. Nor, under such circumstances, can a court of equity rightly withhold its hand on the ground of any supposed inconvenience to those who are the customers of this company. In a similar situation the English chancellor refused to listen to such an appeal. Such an appeal was made in the case of *Broadbent* v. *Imperial Gas Co., 7 DeG., M. & G. 436.* The complaint was, that vegetables growing in the market-garden of the complainant were injured by the gas of that company, and when the argument was pressed that this injury was slight in comparison with the benefits conferred by the company on the public, and that on that account this court would not exercise its power to restrain the manufacture of the gas, Lord Cranworth uses this strong language. He says (at *p. 462*): 'If it should turn out that the company had no right so to manufacture gas as to damage the plaintiff's market-garden, I have come to the conclusion that I cannot enter into any question of how far it might be convenient for the public that the gas manufacture should go on.' He further remarks, 'but unless the company had such a right, I think the present is not a case in which this court can go into the question of convenience or inconvenience, and say, where a party is substantially damaged, that he is only to be compensated by bringing an action *toties quoties*. That would be a disgraceful state of the law, and I quite agree with the vice-chancellor in holding that in such a case this court must issue an injunction, whatever may be the consequences with regard to the lighting of the parishes and districts which this company supplies with gas.' "

This seems to me to settle the rule in this state.

The case of *Broadbent* v. *The Gas Co.*, so cited by the learned chief-justice, was affirmed on appeal, as reported in *L. R.* (*7 H. L. Cas.*) *601*. At *page 615* Lord Kingsdown uses this language: "It is said that the balance of inconvenience is so great against granting an injunction that it ought not to be done; that in one view of it, it may stop these large and expensive works to the great injury of the public, while, on the other hand, the only inconvenience to which the plaintiff in the suit will be subjected, is the inconvenience of the trifling damage, it is said (*but be it trifling or large makes no difference in principle*) that he may sustain from time to time for which he may recover compensation by action."

In this case there had been an action at law brought to trial before Lord Chief-Justice Jervis, and so trifling did the action appear that the chief-justice is said by Lord Cranworth (*7 DeG., M. & G. 445*) to have said, "with his usual keenness, that it was a most ridiculous action."

And I desire here for myself to say that I have never been able to see how the question of the right of the complainant to an injunction on final hearing could ever be a matter properly resting in the "discretion" of the chancellor, as I understand the force of that word in that connection. If by "discretion" is here meant that the judge must be discreet, and must act *with* discretion, and discriminate, and take into consideration and give weight to each circumstance in the case, in accordance with its actual value in a court of equity, then I say that that is just what he must do in every case that comes under his consideration—no more and no less. And that is the sense in which I understand the word is used in *Demarest* v. *Hardham*. But if the word "discretion" in this connection is used in its secondary sense, and by it is meant that the chancellor has the liberty and power of acting, in finally settling property rights, *at* his discretion, without the restraint of the legal and equitable rules governing those rights, then I deny such power. It seems to me that the true scope of the exercise of this latter sort of discretion in the judicial field is found in those matters which affect procedure merely,

40

and not the ultimate right. For instance, in *In re Anderson, 2 C. E. Gr. 536*, the question was whether a fund belonging to an infant should be transferred from one guardian to another, and it was held that its transfer rested in the discretion of the chancellor; and other cases are there cited. So with the question whether or not an issue should be framed by the chancellor to try a question of fact. That was declared by the court of errors and appeals, in *Carlisle* v. *Cooper, 6 C. E. Gr. 576*, to be a matter resting in the discretion of the chancellor. And so with the issuing of interlocutory injunctions where no property right is immediately affected.

I have taken the trouble to examine many of the cases which seem to hold more or less the contrary of what I understand to be the rule laid down by the court of errors and appeals in *Higgins* v. *Water Company*, and find most of them distinguishable. The majority of them are rulings upon preliminary injunctions, where the right was not yet settled, or where the injury was not a continuing one and the remedy at law ample, or, if on final hearing, there was something inequitable in the complainant's conduct or case which would amount to a defence in equity to an action at law.

And of the English cases, it is proper further to observe that some of them gave damages, instead of an injunction, under the authority of the acts of parliament for that purpose, called Lord Cairn's and Sir John Rolt's acts. The giving of damages for continuing nuisances is quite within the omnipotent power of parliament, which is competent to take private property for private purposes. In this country, under our constitutional system, as before remarked, that course is forbidden. I think the language of Lord Cranworth, quoted by the learned chief-justice in *Higgins* v. *Water Company*, applies with increased force in this country.

While the "balance of injury" notion has found frequent place in many English cases, the later and best considered of them put the rules governing courts of equity in such cases upon their true ground. *Clowes* v. *Staffordshire Works, L. R. (8 Ch. App.) 125, 142, 143; Wilts* v. *Water Works, L. R. (9 Ch. App.)*

*451; Goodson v. Richardson, 9 Ch. App. 221,* are examples. This last was a case of an injury to a bare right of property without any actual damage. Defendant had laid a watermain in a public street, the fee of which was in the complainant, and Lord Selborne held he was entitled to a mandatory injunction compelling it to remove it. In the course of his judgment he uses this language:

"It is said that the objection of the plaintiff to the laying of these pipes in his land is an unneighborly thing, and that his right is one of little or no value, and one which parliament, if it were to deal with the question, might possibly disregard. What parliament might do, if it were to deal with the question, is, I apprehend, not a matter for our consideration now, as parliament has not dealt with the question. Parliament is, no doubt, at liberty to take a higher view upon a balance struck between private rights and public interests than this court can take. But with respect to the suggested absence of value of the land in its present situation, it is enough to say that the very fact that no interference of this kind can lawfully take place without his consent, and without a bargain with him, gives his interest in this land, even in a pecuniary point of view, precisely the value which that power of veto upon its use creates, when such use is to any other person desirable and an object sought to be obtained. Besides which, I am not prepared to accede to the proposition that it is an unneighborly proceeding in a man, whose motive for desiring to prevent a particular act may be collateral to the interest in his land—such, for instance, as his being a proprietor of waterworks which may be injured by the proposed use of it—to say to his neighbor who wishes to compete with him in that business, 'You are perfectly at liberty to enter into competition with me as a seller of water to the public of *Ramsgate* in any lawful manner, but you are not at liberty to take my land without my consent for the purpose of competing with me, and I shall object to your doing so.' In that, I confess, I see nothing unneighborly whatsoever. * * * I cannot look upon this case otherwise than as a deliberate and unlawful invasion by one man of another man's land for the purpose of a continuing tres-

pass, which is in law a series of trespasses from time to time, to the gain and profit of the trespasser, without the consent of the owner of the land; and it appears to me, as such, to be a proper subject for an injunction."

There was, in the case in hand, no contention that the neighborhood here in question was ever given up by common consent to mechanical or manufacturing purposes. It seems to be one, mainly, of cheap residences, and retail shops. The language of Chancellor Zabriskie in *Ross* v. *Butler*, *4 C. E. Gr.* (at *pp. 305, 306*), is apt:

"I find no authority that will warrant the position that the part of a town which is occupied by tradesmen and mechanics for residences and carrying on their trades and business, and which contains no elegant or costly dwellings, and is not inhabited by the wealthy and luxurious, is a proper and convenient place for carrying on business which renders the dwellings there uncomfortable to the owners and their families by offensive smells, smoke, cinders, or intolerable noises, even if the inhabitants are themselves artisans, who work at trades occasioning some degree of noise, smoke, and cinders. Some parts of a town may, by lapse of time, or prescription, by the continuance of a number of factories long enough to have a right as against every one, be so dedicated to smells, smoke, noise, and dust, that an additional factory, which adds a *little* to the common evil, would not be considered at law a nuisance, or be restrained in equity.

"There is no principle in law, or the reasons on which its rules are founded, which should give protection to the large comforts and enjoyments with which the wealthy and luxurious are surrounded, and fail to secure to the artisan and laborer, and their families, the fewer and more restricted comforts which they enjoy."

Looking at the instances in which a court of equity has granted relief in cases like the present, we have, in this state, the case of *Demarest* v. *Hardham, supra*, in which the report shows a vibration probably somewhat greater than that shown by the evidence in this case. There the parties occupied adjoining buildings whose walls touched, and complainant manufactured harness and de-

fendant operated steam printing presses, and the vibratory force was not, as here, transmitted many feet through the earth. But I think the right of action at law is quite as clear in the case in hand as it was in *Demarest* v. *Hardham.*

In *Hurlburt* v. *McKone, 55 Conn. 31,* there was a vibration of the same character and degree, as near as may be, as that shown in this case—"the windows rattle in the casings, dishes and other like things standing on the table or shelves shake and jolt together." There was, however, in that case, an additional element of dense smoke, like that enjoined in *Ross* v. *Butler,* and there was proof that the health of a person living in the house was seriously affected by the general nuisance.

In *McKeon* v. *See, 51 N. Y. 300,* the action was for both damages and an injunction under the New York code, and the trial judge found that the action of the defendant's machinery, used to saw marble, produced a jarring and shaking of complainant's two houses, injuring the same and amounting to a nuisance (the degree of vibration was not stated), and gave judgment for $967—apparently for loss of rent—with an award of an injunction. The general term of the supreme court struck out the judgment for damages, but made the injunction perpetual. The court of appeals affirmed this judgment.

A case similar in its circumstances to the last is *Goodall* v. *Crofton, 33 Ohio St. 271.* There the superior court of Cincinnati enjoined the operation of a marble and stone sawing and dressing mill because it caused a jarring and vibration of complainant's house on the adjoining premises, and the supreme court, on error, reversed this judgment on the ground that in Ohio the court will not interfere by injunction when a party had an adequate remedy at law in damages, which they held he had in this case. I have already shown, to my own satisfaction at least, the vice of that position, and cannot but think that the judgment of the lower court was correct.

Several other instances of relief against noises combined with vibration are given in *Wood on Nuisances* (§§ *553, 556*); and in section *769 et seq.* he treats of the remedy in this court.

It was said in the Ohio case, and it was argued here, that if this court is to enjoin a vibration of this character, then it must also enjoin the passage of vehicles on the street which shake the dwellings of the adjoining houses. But the case is quite dis'inguishable. A man builds his house on the street subject to the right of the public to pass upon it with all its annoyance of noise and jar from passing vehicles. This right of passage is a public necessity and benefit, as well as an advantage to the dwellers thereon, and where the land has been taken by condemnation proceedings the injury, if any, to result from its proximity to the street is presumed to have been taken into consideration. Where it has been dedicated of course there can be no cause of action.

Another objection taken was, that if the fact that the vibration as felt in this case is due to the presence of an underlying layer of quicksand, then the defendant should not be held responsible for it. I am unable to discover any strength in that position. I do not see how the fact that nature has provided a very convenient medium through which my neighbor may injure my property should be held to give him the right to injure it.

Nor do I think that the presence of this quicksand renders it impracticable for the defendant to remedy the nuisance without stopping his works. Captain Ward suggests that he should drive piles for a foundation to his machines. There was no proof as to whether it was impossible to reach solid ground with masonry, but it seems to me probable from the evidence that there will be no difficulty in so doing, and that, at a comparatively trifling expense, the defendant may so arrange matters that his neighbors will not be annoyed by his machinery.

The result of a careful review of the evidence upon my mind is to lead me to the conclusion that the degree of injury is such as to entitle the complainant to damages in an action at law, with the result that he is entitled to an injunction in this court.

The injury, to be actionable, must be sensible and appreciable, as distinguished from one merely fanciful, and in a case like this I assume, for present purposes, that it must have the effect of rendering the premises less desirable, and so less valuable for ordinary use and occupation. Now it seems to me that a vibra-

tion that causes the windows and doors of a house to rattle in their casings, and dishes on the shelves to rattle and move on one another, and the walls to crack, and is distinctly felt by persons in the house, would have such effect, and is therefore actionable; while smoke and noise might have a similar effect in rendering the house less desirable without being actionable, because the degree of discomfort would not be sufficiently great to reach the standard—if, indeed, any standard has been established—applied to that class of injuries.   See *Walter* v. *Selfe, 4 DeG. & S. 318, 20 L. J. Ch. (N. S.) 434; 15 Jur. 416; Ross* v. *Butler, 4 C. E. Gr. 294, 299, 306.*

There is evidence tending to show that complainant made little or no complaint with regard to this vibration until about the time the bill was filed, when the invasion of his property rights by hanging the stay-wire over his land, by driving the filthy steam from the sewer into his kitchen, and the sprinkling of spray over his back yard, seemed to combine to exasperate him.   This apparent acquiescence can only be used as evidence that the complainant did not consider the vibration as serious, but I think that is not sufficient in that regard to overcome the weight of the evidence that his house is injured.

I will advise a decree that the defendant be restrained from so using his machines as to cause the complainant's house to vibrate, and also from allowing the water and spray from the exhaust of his engines to come on to the complainant's lands.