THE STATE, ANSON J. RIDER, FISH AND GAME WARDEN,
DEFENDANT IN CERTIORARI, v. LAKEWOOD MARKET
COMPANY, A BODY CORPORATE, PROSECUTOR.

Submitted March 20, 1913—Decided July 24, 1913.

1. If there is an exception in the enacting or prohibitory clause of
   a penal statute, the complaint in an action on that clause must
   aver that the defendant is not within the exception; but if the
   exception is in a subsequent clause of the same section, or in a
   subsequent section of the same statute, or in a subsequent enact-
   ment, that is a matter of defence, and the complaint need not
   show that the defendant is not within the exception.

2. The Fish and Game Procedure act (*Comp. Stat., p.* 2559,
   § 264) provides that proceedings brought under its provisions
   shall be entitled and shall run in the name of the State of New
   Jersey with one of the fish and game wardens of the state, or
   a deputy fish and game warden, &c., as prosecutor. The act
   contains no provision that either the summons or the warrant
   shall contain any statement of the use to which the penalty is
   to be applied. In a proceeding under section 8 of the Fish and
   Game act of 1903, as amended by *Pamph. L.* 1910, *p.* 91 (*Comp.
   Stat., p.* 2508, § 19), the summons called upon the defendant
   "to answer unto Anson J. Rider, fish and game warden, pros-
   ecutor, who sues for the use of the said state." *Held*—
   (1) That the statement, "Who sues for the use of the said
   state," is surplusage which may be rejected, and does not vitiate
   the process.
   (2) That, even though the summons be regarded as defective,
   the defect will, on *certiorari,* be regarded as waived when it
   appears (*a*) that the alleged defect was not called to the at-
   tention of the justice of the peace, and (*b*) that, after objecting
   to the jurisdiction of the justice upon another ground, the de-
   fendant went to trial upon the merits, produced testimony, and
   after conviction, appealed to the Court of Common Pleas.

3. In prescribing a form of "conviction" which does not comprehend
   a statement of the evidence, the legislature has not violated any
   constitutional right of the defendant in passing the supplement
   of 1905 (*Pamph. L., p.* 184; *Comp. Stat., p.* 2560, § 269) to the
   Fish and Game Procedure act of 1897, which act by section 9
   (*Comp. Stat., p.* 2558, § 257) provided for an appeal to the
   Court of Common Pleas.

4. The eighth section of the Fish and Game Act of 1903, as
   amended by *Pamph. L.* 1910, *p.* 91 (*Comp. Stat., p.* 2508, § 19),
   in providing that "any person violating any of the provisions
   of this act shall be liable to a penalty of twenty dollars for
   each duck  *  *  *  had in possession in violation of this act,"

is not unconstitutional as conferring upon the justice of the peace an unwarranted jurisdiction.

5. In a proceeding for a violation of section 8 of the Fish and Game act of 1903, as amended by *Pamph. L.* 1910, *p.* 91 (*Comp. Stat., p.* 2508, § 19), neither party is entitled to a trial by jury.

On *certiorari.*

Before Justices TRENCHARD, PARKER and VOORHEES.

For the prosecutor, *Harry E. Newman,* prosecutor of the pleas, and *R. Ten Broeck Stout.*

For the defendant, *Josiah Stryker* and *Edmund Wilson,* attorney-general.

The opinion of the court was delivered by

TRENCHARD, J.   This writ brings up for review a conviction of the Lakewood Market Company in a proceeding before a justice of the peace, on a complaint made by Anson J. Rider, one of the fish and game wardens.

The complaint alleged that "on the third day of May, A. D. 1912, one Lakewood Market Company, a body corporate, at the township of Lakewood, in the county of Ocean, did unlawfully have in possession twenty-eight ducks, the same not being black duck, mallard or wood duck, twenty-seven of said duck being known as broad-bill, sometimes called blue-bill, and one of said duck being known as redhead, said third day of May not being a day between the first day of November and the fifteenth day of March, both dates inclusive, contrary to the provisions of the eighth section of the act entitled "An act for the protection of certain kinds of birds, game and fish, to regulate their method of capture and to provide open and close seasons for such capture and possession (Revision of 1903)," approved April 14th, 1903, as such section was amended March 31st, 1910.

The first reason assigned for reversal is that "there was no legal or sufficient complaint filed with the justice of the peace upon which to authorize the issuing of the summons."

In the brief the argument is made that the complaint. was insufficient because it did not negative the exception contained in the supplement of *Pamph. L.* 1908, *p.* 407; *Comp Stat., p.* 2516, § 66.

We think there is no merit in the contention.

The complaint charges a violation of section 8 of the Fish and Game act of 1903, as amended by *Pamph. L.* 1910, *p.* 91; *Comp. Stat., p.* 2508, § 19. That section provides, among other things, as follows:

"It shall be unlawful to * * * have in possession, * * * any duck or swan, other than black duck, mallard or wood duck, excepting only between the first day of November and the fifteenth day of March following, both dates inclusive in each year, * * * Any person violating any of the provisions of this act shall be liable to a penalty of twenty dollars for each duck * * * had in possession in violation of this act."

The exception contained in *Pamph. L.* 1908, *p.* 407; *Comp. Stat., p.* 2516, § 66, is as follows:

"Whenever by the laws of any other state or country it shall .be lawful to take out of the confines of the said state or country any game, whether the same be fowl or animal, it shall be lawful to bring such game within the State of New Jersey," &c.

We think it was not necessary to negative that exception.

In the early case of *Rex* v. *Jukes,* 8 *T. R.* 542, Lord Chief Justice Kenyon is reported to have observed:

"That this conviction could not be supported because the information did not negative the exception introduced in the clause enacting the offence, viz., that the buttons had been exposed to sale in this instance upon the pattern cards. In like manner as in convictions on the game laws it has always been deemed necessary to negative in the information the defendant's qualifications to kill game. That the only cases where this was not necessary to be done were where the exception was introduced in a subsequent clause; and there it must come by way of defence on the part of the defendant."

In *Spieres* v. *Parker,* 1 *T. R.* 144, Lord Mansfield said:

"The first point which has been made is question of form, whether the exceptions contained in the enacting clause of a statute, which creates an offence, and gives a penalty, must be negatived by the plaintiff in his declaration ? The pleader, who drew this declaration, was clearly of the opinion that it was necessary; for he has negatived what he thought to be the exception, and he was right; for it is a settled distinction between a proviso in the description of the offence, and a subsequent exemption from the penalty under certain circumstances. If the former, the plaintiff must, as in actions upon the game laws, aver a case which brings the defendant within the act; therefore he must negative the exceptions in the enacting clause, though he throw the burden of proof upon the other side. Thus it stands on the question of form."

In *Gould Pl.* 172, the rule is stated thus:

"In an action on a penal statute, the subject of any exception in the enacting or prohibitory clause of the act, must, in the declaration be excluded by averment; but of any proviso or qualification in a separate substantive clause, the declaration need not take notice. In the first case the exception is an essential part of the *description of the offence* or thing prohibited; in the latter, the proviso, &c., is only distinct matter of defence. Thus, if a statute enacts that if any person, not having a certain qualification, as a freehold estate, shall kill certain game, he shall incur a certain penalty, the declaration in an action on the statute must aver that the defendant had not such a freehold. But if the act contains a separate proviso, that if he shall have obtained a license for the killing from a magistrate, he shall not be liable to a conviction, it need not be stated that he had no such license."

The leading case in New Jersey on this point is *McGear* v. *Woodruff*, 4 *Vroom* 213. This was an action brought to recover a penalty for violation of an ordinance of the city of Bridgeton. Although the form of procedure was not, strictly speaking, a summary proceeding, yet the trial was of such a summary character that a jury trial was not permitted. The rule is stated by Mr. Justice Depue in the following language:

"In an action founded on a statute, it is only necessary that the plaintiff should show himself entitled, under the enacting clause. If there is an exception in the enacting clause, the plaintiff must show that his adversary is not within the exception; but if the exception is in a subsequent clause in the same section or in a subsequent section of the same act or in a subsequent statute, that is a matter of defence and the plaintiff need not show that the defendant is not within or not protected by the exception."

The reason given for this rule appears in a subsequent part of the opinion in which the learned justice quotes the extract from *Gould on Pleading,* above referred to. This doctrine has been approved in *Townley* v. *State,* 3 *Harr.* 322; *Roberson* v. *Lambertville,* 9 *Vroom* 72; *Greeley* v. *Passaic,* 13 *Id.* 90 (reversed in the Court of Errors and Appeals in 13 *Id.* 429 on another point); *Hoffman* v. *Peters,* 22 *Id.* 244; *Plainfield* v. *Watson,* 28 *Id.* 525; *United States* v. *Cook,* 17 *Wall.* 168.

The case of *Vandegrift* v. *Meihle,* 37 *Vroom* 92, was a summary conviction for violation of the Milk law. It was contended that the complaint was insufficient, because it failed to negative the fact that the milk was not skimmed milk, duly labeled as required by the first section of the act. In support of this contention, the case of *Jacobus* v. *Meskill,* 27 *Id.* 255, was cited. In dealing with this point this court, by Mr. Justice Van Syckel, said:

"The rule applies only where the subject of any exception is found in the enacting or prohibitory clause. Where it is found in a separate substantive or prohibitory clause as in this case, it need not be noticed in the pleadings. In the latter case the Court of Errors and Appeals has held it to be only a distinct matter of defence in the recent case of *Mayer* v. *State,* 35 *Vroom* 323."

In the case of *Conner* v. *Fogg,* 46 *Vroom* 245, which arose on *certiorari* to review the conviction of the prosecutor before a justice of the peace for violation of section 24 of the Fish and Game act of 1903 (*Comp. Stat.,* p. 2511, § 35), the rule laid down in *McGear* v. *Woodruff, supra,* and the other cases

which follow this decision, was approved by this court as applying to that proceeding. It is to be noted that the proceeding in that case was identical with the proceeding in the case at bar, as it was brought to recover a penalty for violation of another section of the same act, in accordance with the same procedure law which governs this case.

The only authority in this state which appears to contradict this rule is the case of *Doughty* v. *Conover,* 13 *Vroom* 193. This case supports the prosecutor's contention. The authority, however, relied upon by Chief Justice Beasley in his opinion, is 1 *Chitty's Criminal Law* *284. The cases cited by Mr. Chitty as support for the statement upon which the opinion in Doughty *v.* Conover is based do not support the doctrine. It is interesting to note in this connection that in the case of *Wells* v. *Iggulden,* 5 *Dowl. & Ry.* 13 (King's Bench), Mr. Chitty appeared for the defendant and argued for the rule as stated in his treatise on Criminal Law, but the Court of King's Bench, in an elaborate opinion, decided against his contention. An extract from this opinion is as follows:

"The general rule is, that if there is an exception which constitutes an essential part of an enacting clause, the pleader must negative the exception in the declaration; but if the exception comes after the enacting clause by way of proviso, then it is sufficient for him to show that the facts alleged are within the enacting part of the clause, and what is contained in the proviso must be stated by the other party, by way of plea or defence. In this case, it is clear that the exception comes in by way of proviso, and is not incorporated with the enacting part of the clause. In many acts of parliament parentheses are introduced by way of exception or qualification, and become inseparable from the enacting clause, and therefore the pleader is under the necessity of negativing such exception or qualification. For instance, in the game laws, it is enacted that if any person 'not being qualified shall do so and so,' those words clearly form part of the enacting clause. But here the exception comes in by way of proviso."

In the case of *Doughty* v. *Conover, supra,* an attempt is made to distinguish between a summary proceeding for the collection of a penalty and a civil action founded on the statute with respect to this rule. This distinction would apply with equal force to the case of *Vandegrift* v. *Meihle, supra,* and to the case of *Conner* v. *Fogg, supra,* both of which cases were summary proceedings for the collection of a penalty, in which the procedure was substantially the same as that in the case at bar.

While the case of *Doughty* v. *Conover* does not appear to have been expressly overruled, it has been ignored by this court in subsequent decisions involving the same question, and the rule announced in the case of *McGear* v. *Woodruff* has been consistently followed both by this court and the Court of Errors and Appeals.

It is next insisted that the judgment should be reversed because the justice of the peace "was without jurisdiction to try the case." The specific reason which prosecutor alleges in its brief why the justice did not have jurisdiction is that the summons was defective because it called upon the defendant "to answer unto Anson J. Rider, fish and game warden, prosecutor, who sues for the use of said state." The prosecutor insists that under chapter 247 (*Pamph. L.* 1911, *p.* 528) the moneys recovered as fines for violations of the fish and game laws are paid to the board of fish and game commissioners for their use, and that, therefore, the summons should not have stated that the prosecutor sued for the use of the state.

On the other hand, it is contended with much force in the admirable brief presented on behalf of the game warden, that the statement was not inaccurate; that the penalty is, in legal effect at least, sued for for the use of the state. It is true that the board of fish and game commissioners is a state board. It has no duties to perform except state duties. It is clothed with state powers. The act of 1911 seems to be merely a provision by the legislature for the support of one of the arms of the state government. This is indicated by other legislation on the subject. The board of fish and game commissioners is required by section 2 of an act passed in

1907 (*Comp. Stat., p.* 4959, § 106) to pay to the state treasurer all moneys collected by it and to report such collections in detail to such state treasurer at least once a month. By section 4 of the same act the comptroller of the treasury is required to institute suit for the collection of any such moneys, and provision is made that such suit shall be commenced in the name of the State of New Jersey. By the first section of a supplement to that act, passed the following year (*Comp. Stat., p.* 4960, § 113), it is provided that moneys paid into the state treasury by state institutions and commissions under the provisions of the act just referred to, are appropriated for the maintenance of the institutions and commissions so paying, and that such moneys may be withdrawn from the treasury in the manner prescribed by the act first above mentioned without being otherwise specifically appropriated for that purpose. It will also be seen by reference to other statutes that the legislature has always treated the moneys collected by the state fish and game board as state moneys and has regulated its expenditures in detail. See chapter 329, *Pamph. L.* 1911, *p.* 701; also chapter 118, *Pamph. L.* 1912, *p.* 167.

It would seem, therefore, that the money recovered for violations of these acts is actually recovered for the use of the state. It is paid into the state treasury as other state moneys are paid. It is disbursed through the state comptroller. Its expenditure by the fish and game board is regulated by the legislature in every respect. And it may well be urged that the only effect of the act of 1911 is to appropriate the money collected by the fish and game board to the use of such board without including such appropriation in the annual appropriation bills.

But, however this may be, we think the representation in the summons that the warden "sues for the use of the said state" did not deprive the justice of jurisdiction for two conclusive reasons:

*First.* The Fish and Game Procedure law (*Comp. Stat., p.* 2559, § 264) provides that proceedings brought under its provisions shall be entitled and shall run in the name of the

State of New Jersey with one of the fish and game wardens
of the state, or a deputy fish and game warden, &c., as prose-
cutor. The act contains no provision that either the sum-
mons or warrant shall contain any statement of the use to
which the penalty is to be applied. The defendant is in no-
wise interested in the application of the penalty. Therefore
any statement contained in the summons of the use to which
the penalty is to be applied is surplusage, which may be re-
jected, and cannot operate to vitiate the process. This case
is distinguishable from the cases cited by the prosecutor in *cer-
tiorari,* in that those cases were either *qui tam* actions in which
it was held necessary that the record should show to whom
the judgment was to be paid, or else the statute providing
for the particular action had not been followed in some ma-
terial respect. In *Bowen* v. *Mulford,* 5 *Halst.* 230, the reason
for the reversal was the material variance between the state
of demand and the summons in the statement of the name
of the plaintiff. The same is true of *Governor* v. *Horton,* 5
*N. C.* 212, while in *Bradley* v. *Baldwin,* 5 *Conn.* 288, the
court refused to reverse the judgment and held that the
alleged error was a mere clerical error which the clerk could
correct. As pointed out in *Johnson* v. *Barclay,* 1 *Harr.* 1,
and in *Minard* v. *Dover Gas Co.,* 47 *Vroom* 132, there is a
decided distinction between a summary proceeding of this
character and a *qui tam* action, and the rules applicable to
the latter action do not apply to this. In this case the pro-
ceeding is governed entirely by the Fish and Game Procedure
act. *Comp. Stat., p.* 2556. See *Comp. Stat., p.* 2514, §
52; also chapter 325 of *Pamph. L.* 1912, *p.* 568, § 3.

*Secondly.* Even if the summons be regarded as defective in
this respect, the prosecutor has waived the right to take advan-
tage of such defect by its appearance and subsequent conduct.
The prosecutor seeks to avoid the effect of its appearance by
insisting that it appeared specially before the justice, merely
for the purpose of challenging his jurisdiction and that it
made the objection in question. This statement is not, how-
ever, supported by the state of the case. It appears therefrom

that the sole objection to the jurisdiction of the justice made before him was, "That the pretended summons is for a penalty of eleven hundred dollars, and for other reasons, is contrary to law and is void." This amounted to an objection that the summons was void because it was for the penalty of $1,100. As a matter of fact, the penalty named in the summons was $560. The attention of the justice was not called to the statement in the summons which defendant now alleges renders it defective. If defendant, after making this objection, appeared generally, there can be no doubt but that it waived this alleged defect. It appears that after the denial of this motion the defendant demanded a jury. It further appears that, after that motion was denied, one David Barrow testified for the defendant, and a trial was had on the merits. It further appears that the defendant, after conviction, appealed to the Court of Common Pleas, as allowed by the statute, which appeal was dismissed. These acts constituted a general appearance, and this appearance was a waiver of any defect in the summons. *Dare* v. *Ogden, Coxe* 91; *Clifford* v. *Overseer of the Poor*, 8 *Vroom* 152; *Ridgway* v. *Horner*, 26 *Id.* 85; *Steinlein* v. *Folwell*, 24 *Id.* 176.

It is next argued that the judgment must be set aside because the "conviction" does not set forth the evidence upon which it is founded.

We remark that the prosecutor seems to have failed to assign any reason upon which such argument may rest. But however this may be, we think the contention is without merit.

The "conviction" is in the form prescribed by the supplement of 1905 (*Pamph. L., p.* 184; *Comp. Stat., p.* 2560, § 269) to the Fish and Game Procedure act of 1897. The act of 1897 (*Comp. Stat., p.* 2558, § 257) provides for an appeal to the Court of Common Pleas. In prescribing a form of conviction which does not comprehend a statement of the evidence the legislature has not violated any constitutional right of the defendant. *Waterbury* v. *Newton*, 21 *Vroom* 535; *Orange* v. *McGonnell*, 42 *Id.* 418; *Minard* v. *Dover Gas Co., supra.*

It is next urged that the judgment should be reversed because the act under which the proceedings were had and judgment given pretends to extend the jurisdiction of justices of the peace to an unlimited amount, and is therefore unconstitutional.

We think the objection without merit. Our constitution contains no provision which limits the legislature as to the size of a penalty which may be recovered before justices of the peace. The question as to whether jurisdiction of matters of this kind should be given to justices of the peace or to other magistrates or judges, is a question to be solved solely by exercise of legislative discretion. In this connection it is to be observed that the justice of the peace in this case is not given the right to finally determine either the law or the facts, for by section 9 of the Fish and Game Procedure act (*Comp. Stat., p.* 2558, § 257) the right of appeal is given to the Court of Common Pleas of the county in which the case is tried. At the trial of such appeal the case is tried *de novo* both as to facts and law. *Minard* v. *Dover Gas Co., supra.* Moreover, it is apparent from an examination of our statutes and decisions that justices of the peace have heretofore been entrusted with the determination of matters involving property of considerable value, as for example, in landlord and tenant cases. So, too, in *Haney* v. *Compton,* 7 *Vroom* 507, where the Court of Errors and Appeals held that a statute, which provided that any vessel used in violation of its provisions should be forfeited and that after seizure of the vessel, information should be given to two justices of the peace for the county in which the seizure has been made, "who shall meet at such time and place as they shall appoint, and hear and determine the matter," was due process of law.

Again, in *Day* v. *Compton,* 8 *Vroom* 514, the owner of a vessel which had been seized under that act replevined the vessel while it was in the custody of the justices of the peace, pending their determination as to whether or not it had been forfeited. The Court of Errors and Appeals (in an opinion by Chief Justice Beasley) held that the jurisdiction of the justices of the peace was exclusive and that the Circuit Court

was without jurisdiction in the replevin suit. While it does not appear to have been contended in these cases that the legislature had no authority to confer upon justices of the peace jurisdiction as to the forfeiture of property as valuable as the vessels in these cases evidently were, still the diligence with which these forfeitures were contested, as well as the opinion of the court in sustaining them would, inferentially, at least, show that no doubts were entertained as to the power of the legislature to vest jurisdiction of this character in justices of the peace. Furthermore, the section of the act under which the defendant in the present case was convicted, does not confer an unlimited jurisdiction. It provides that any person violating it shall be liable to a penalty of $20 for each duck had in possession. The complaint charged the defendant with having in possession twenty-eight ducks. A penalty of $560 was imposed. This was, therefore, in effect, a joint trial, and conviction on a number of single complaints. In any aspect it is quite common and is not unconstitutional as conferring upon the justices of the peace an unwarranted jurisdiction.

Lastly, it is contended that the judgment should be set aside because the justice of the peace refused the defendant below a trial by jury.

We think not. It has been repeatedly held in this state that in a summary procedure for the collection of a penalty for violation of a police regulation, neither party is entitled to a trial by jury. One of the leading cases on this subject is *Johnson* v. *Barclay,* 1 *Harr.* 1. Another is *McGear* v. *Woodruff,* 4 *Vroom* 213. These were followed by *Shivers* v. *Newton,* 16 *Id.* 469, and *Carter Brothers* v. *Camden District Court,* 20 *Id.* 600.

The case of *Minard* v. *Dover Gas Co.,* 47 *Vroom* 132, was an action brought to recover a penalty of $200 for violation of section 33 of the Fish and Game act. The procedure was identical with the procedure in the case at bar. This court, after reviewing the procedure, used the following language:

"The Fish and Game Procedure act of 1897 permits no trial by jury, the magistrate being required to hear and determine the guilt or innocence of the person accused, but an appeal is permitted to the Common Pleas, which appeal is to be heard in the same way and manner as the case was heard before the magistrate, to wit, without a jury."

The prosecutor claims, however, that the doctrine of the cases above cited does not apply to the case at bar, because of the size of the penalty recovered in this case. He bases this claim upon a *dictum* of Mr. Justice Elmer in *State* v. *Zeigler,* 3 *Vroom* 262, and upon the rule adopted by the Supreme Court of New Hampshire in the cases cited by him. This *dictum* of Mr. Justice Elmer was referred to in McGear *v.* Woodruff, and in this connection attention was called to the fact that in the case of *Johnson* v. *Barclay, supra,* the Supreme Court sustained a summary conviction before a justice of the peace without a jury in a case in which the penalty exceeded $16.

The validity of a provision for the collection of a penalty by summary proceedings, without a jury trial, depends, not upon the amount of the penalty to be so recovered, but upon the character of the statute to be so enforced and upon the nature of the offence for which such penalty is provided. This is apparent from a reading of the decisions. It is the rule which has been generally adopted by the courts of other states, and approved by the text-book writers. *Prof. Jury Tr.,* § 95 *et seq.*

There are many kinds of proceedings in which a jury trial is not a matter of right. Among these may be mentioned matters properly cognizable before the Court of Chancery, the assessment of damages in proceedings for condemnation of lands, cases in the Orphans' Court, in the admiralty jurisdiction of the United States courts, in proceedings for contempt of court, and proceedings for forfeiture of property for violation of law. See *Scudder* v. *Trenton Delaware Falls Co., Saxt.* 695; *Wood* v. *Tallman, Coxe* 153; *State* v. *Doty,* 3 *Vroom* 403; *Haney* v. *Compton,* 7 *Id.* 507, 525.

It is well known that it has long been the practice to enforce police statutes and to punish minor criminal offences before a justice of the peace without a jury. It appears in 2 *Burn Just.* 295, that during the reign of George I. fish and game laws were enforced in England by summary procedure. See, also, 4 *Bac. Abr.* 442.

The conviction will be affirmed, with costs.