71 N.J. Super. 479 (1962)
177 A.2d 299
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
SPENCER WOUTERS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 11, 1961.
Decided January 18, 1962.
*481 Before Judges CONFORD, FREUND and LABRECQUE.
Mr. Bernard A. Campbell argued the cause for appellant.
No appearance for respondent.
The opinion of the court was delivered by FREUND, J.A.D.
Defendant, Spencer Wouters, was convicted on a trial de novo in the Hunterdon County Court of *482 trespassing on the land of another person for the purpose of hunting deer in violation of N.J.S.A. 23:7-1. He was originally tried in the Municipal Court of Delaware Township, Hunterdon County, convicted, and fined $25, plus costs of $5. The County Court increased the fine to $50.
The appendix furnished us by appellant was entirely inadequate; however, we have read the entire transcript of the trial de novo and find the essential facts to be as follows. At about 10:00 or 10:30 A.M. on December 31, 1960, the closing date of the special deer hunting season, Wouters and a companion, William Hutton, who was also convicted in the municipal court, were driving in the vicinity of the Brookville or Brook Hollow Road, in Delaware Township, N.J. Both wore hunting clothes, had hunting licenses and were armed with 12-gauge shotguns. They stopped and left their car when they noticed eight or nine deer running through a nearby field. Upon their return they were met by Otto F. Schlett, an employee of Nilsen Detective Agency, who informed them that they had just trespassed on property owned by Miss Jane E. Henderson.
Schlett testified for the State that his agency had been employed by Miss Henderson to prevent trespassing on her property during the deer season. She had instructed him as to the boundary lines of her property. While cruising in the area he received a radio signal from Nilsen personnel inside the Henderson property. Accompanied by one John Walton, he drove to a bend in the Brookville Road adjacent to the Henderson land and saw a parked automobile. He first observed Hutton about 15 feet within the Henderson property walking toward him along an old road. Schlett and Walton identified themselves as state officers (although they were not), and told Hutton he had trespassed on private property that was being patrolled. Soon after, he saw Wouters coming out "from the green stuff right directly under a trespass sign on this property." He also told him he was a trespasser on the Henderson property and informed the two men that their cases would go to the Assistant *483 District Conservation Officer, Warden William L. Jeschke. At the time, the ground was covered with snow and there were footprints from the defendants' car to where the defendants were first seen coming from the Henderson property. Schlett testified that both men unloaded their shotguns after they had returned to the road. Wouters and Hutton told Schlett that: "They were pursuing deer." On January 5, 1961 Schlett reported the trespass to Jeschke.
On cross-examination Schlett stated that the Henderson property line, indicated by a stone marker, ran approximately eight feet away from the road. He said there were many red and black "No Trespassing" signs posted along the boundary line of the property, about 20 to 25 feet apart.
Walton substantially corroborated Schlett's testimony. He, too, observed Hutton heading out from the Henderson property, followed shortly by Wouters. He did concede, however, he was not too well acquainted with the boundary lines in that area.
Warden Jeschke stated that at about noon on December 31, 1960, Wouters and Hutton came to his home, told him of their meeting with Schlett, and asked what procedure they were to follow if a summons were to be issued. He testified that he "asked them did they actually go on any certain lands, and both said yes." Both also admitted they "were in the act of hunting." He asked "both men * * * why did they enter this land?" They said, "Well, we saw a herd of 8 or 9 deer and we entered those lands in search of a buck, but all we saw was anterless [sic] deer." Jeschke testified that the red and black "No Hunting" signs were posted on trees and fences within the property lines. In the particular area where the two defendants were apprehended there was a double row of such signs  one 8 to 10 feet from the edge of the road, the other 30 to 35 feet from the road. He testified that "they were scattered out all over. There's an awful mess of signs in there."
*484 Miss Henderson testified that she was the owner of 75 acres of land on which the defendants were alleged to have trespassed. In October of 1960, with a survey in hand, she, together with her superintendent, David Laing, walked the boundary lines of her property. She had purchased signs reading "No Trespassing," "No Deer Hunting," "No Trespassing With Dog or Gun." Under her direction these signs were posted on trees or stakes at eye-level and were as close as 20 yards apart in certain areas. At the boundary line where defendants crossed onto the Henderson property, similar signs had also been posted.
Laing corroborated Miss Henderson's testimony in all important respects. He added that the signs were mounted on boards and "nailed with good long nails into the trees along the Brook Hollow Road." He patrolled the Henderson property during hunting season and would replace any signs where needed. He said the signs were posted on December 31 and were visible from all points along the road.
The defense consisted principally of the testimony of Wouters and Hutton. Wouters admitted he stopped his car "to go on some land." He saw no signs and went in a short distance where he first saw a sign. He returned to his car and found Schlett had parked alongside. He did not deny entering the Henderson property, although claiming he went only ten feet off the road. He testified that he never crossed over the stone hedge row as Schlett had indicated, but recalled that Schlett "showed me a sign up in the air, when I came out, on a tree, which was between the stone fence and the road, and I probably went underneath it." He conceded telling Jeschke that he was apprehended while on "some land over near Sandy Ridge that we had stepped off the road on."
Hutton testified that he and Wouters noticed deer crossing a field and they stopped their car. They walked six or eight feet into the Henderson property and since the deer were not coming toward them, returned to their car.
*485 From early common law, the unauthorized entry into another's land constituted a trespass. Prosser, Torts (2d ed. 1955), § 13, p. 54. Blackstone observed:
"Every unwarrantable entry on another's soil the law entitles a trespass by breaking his close * * * For every man's land is in the eye of the law enclosed and set apart from his neighbors: and that either by a visible and material fence, as one field is divided from another by a hedge; or by an ideal invisible boundary, existing only in the contemplation of law, as when one man's land adjoins to another's in the same field. And every such entry or breach of a man's close carries necessarily along with it some damage or other; for if no other special loss can be assigned, yet still the words of the writ itself specify one general damage, viz. the treading down and bruising his herbage." Chase's Blackstone's Commentaries (4th ed. 1919), pp. 735-6.
The trespass may be a mere momentary invasion, as when one walks across another's fields. Restatement, Torts, § 158, comment (g) (1934). It may even consist of only shaking another's fence. Hennessy v. Carmony, 50 N.J. Eq. 616, 618 (Ch. 1892). The trespass is actionable even though the damage to the owner is not appreciable. Spiegel v. Evergreen Cemetery Co., 117 N.J.L. 90, 94 (Sup. Ct. 1936). To hunt on lands of another without his consent is a trespass, regardless of the harmless character of the entry. N.J.S.A. 23:7-1; 1 Harper & James, Torts (1956), § 1.5, p. 16. The trespass was expressly prohibited by N.J.S.A. 23:7-1 and any violator is subject to be punished by a fine of not less than $25 and not more than $50, plus costs. The statute provides as follows:
"A person who trespasses on the occupied lands of another person in this State, for the purpose of hunting with a firearm or fishing, killing, trapping, or catching any game or fish, after notice bearing the name of the owner, occupant, lessee or licensee thereof, forbidding the trespass, has been conspicuously posted by the owner, occupant, lessee or licensee with intervisible signs displayed not fewer than ten to a mile along the exterior boundaries and along all roads, trails and rights-of-way entering such land, or after having been forbidden so to trespass by the owner, occupant, lessee or licensee, shall be punished by a fine of not less than twenty-five dollars ($25.00) and not exceeding fifty dollars ($50.00) and costs."
*486 The evidence adduced makes it clear that Wouters had trespassed upon the lands of Miss Henderson. Since he was neither invited, suffered, nor privileged to be there, he was a trespasser. Williams v. Morristown Memorial Hospital, 59 N.J. Super. 384, 389 (App. Div. 1960); 1 Harper & James, supra, § 1.5, p. 16. A proscription of trespassing on lands where game is likely to gather is a reasonable exercise of legislative power. Hopewell Twp. v. Gruchowski, 29 N.J. Super. 605, 609 (Cty. Ct. 1954).
Defendant contends that the procedural steps taken here relating to service of summons and complaint were not authorized by the statute and that the prosecution of the case by private counsel was unauthorized and prejudicial. Wouters claims prejudice in Jeschke's failure to serve process upon him until approximately three weeks after the alleged offense. It is also contended that N.J.S.A. 23:7-2 calls for arrest of the violator without warrant by the owner, occupant or an officer of the law, thereby precluding process by service of complaint. We find the latter contention totally unfounded in the statute. The process by arrest is permissive, not mandatory. Moreover, some of these contentions are being argued for the first time here, without any objection having been made below. R.R. 3:5-5(b)(2) provides that failure to object before trial constitutes a waiver thereof. Unless we find plain error, considering the entire record, relief should be barred on this ground. R.R. 1:5-1(a). The claim of prejudice growing from this delay is neither substantiated as regards the defendant or in the light of any pertinent legal principles. In any event, the action was quasi-criminal, with the requirement that the fine was to be paid to the Division of Fish and Game, N.J.S.A. 23:10-19, and must be governed by the rules of criminal practice, R.R. 3:1-1 et seq. Accordingly, the appeal to the County Court also operated as a waiver of all defects in the record, including any defect in the absence of any process or charge laid in the complaint. State v. Osborn, 32 N.J. 117, 121 (1960); R.R. 3:10-10(b); R.R. 5:2-6(b)(6). Cf. State *487 v. Lakewood Market Co., 84 N.J.L. 512, 520-1 (Sup. Ct. 1913), where it was held that even if a summons under the Fish and Game Law was defective, the defect was waived when it was not called to the attention of the justice of the peace and the defendant appeared and was tried on the merits.
Regarding the other alleged procedural error, the trial on behalf of the State was conducted by Robert F. Danziger, attorney for Miss Henderson, the complaining witness. The prosecuting attorney, including, of course, the Attorney General, is obliged to appear and act on behalf of the State at the County Court hearing. R.R. 3:10-10(d). This rule was formally observed since Marvin M. Woodlinger, a Deputy Attorney General, did appear although he took no active part in the trial. As noted above, the owner of land is permitted to arrest without warrant any trespasser within the terms of N.J.S.A. 23:7-1 and take him to trial before any county district or municipal court which shall have jurisdiction to try such offender and pronounce sentence. N.J.S.A. 23:7-2. But he is not permitted to undertake the prosecution in his own name. Any court that tries a complaint under N.J.S.A. 23:7-1 brought in the name of the owner or occupant of the trespassed on land is without jurisdiction. The statute is penal and contemplates a formal complaint in the name of the State. Lake Pochung Outing Association v. Current, 7 N.J. Misc. 980, 147 A. 639 (Sup. Ct. 1929). In the instant case, the suit was in fact brought in the name of the State and Mr. Woodlinger appeared for the State. Since a prosecutor can consent to have a private attorney assist him during the prosecution, there was no error. Gardner v. State, 55 N.J.L. 17, 32-3 (Sup. Ct. 1892), affirmed 55 N.J.L. 652 (E. & A. 1893).
Defendant also charges that Miss Henderson did not own the land on which he was alleged to have trespassed and on which she had placed the prohibitory signs. If the latter were the case, she would herself have been guilty of violating the provisions of R.S. 23:7-6 which makes it unlawful for anyone to place notices forbidding hunting on *488 any property other than his own. Our examination of the record indicates that there was credible evidence from which the trial judge could find beyond a reasonable doubt that the notices had been properly posted on the Henderson tract.
Finally, Wouters claims he was denied a fair and impartial hearing because of the County Court judge's hostility. We observe that the judge encouraged counsel for the prosecution not to cross-examine either of the defendants. The transcript discloses that the judge at times was impatient and critical of defendant's counsel. At the outset he stated, "Apparently it seems like making something out of nothing. Maybe it is important to somebody but I don't know why." At one point, in replying to a statement made by defendant's counsel, he made a remark which was injudicious and which we do not condone. However, we do not find this conduct so prejudicial as to require a reversal. From the record it is clear that the burden of proving the alleged trespass did take place in violation of the statute was borne beyond a reasonable doubt. The judgment will be affirmed.